# Hastings' Case.

One having a judgment which binds distinct pieces of land, may at law elect which he will proceed against for payment, or take which he pleases first, (if one is not sufficient to pay his debt,) but when the money is brought into court, and there are contending claimants, it will be distributed according to equity.

A creditor having two funds for payment of his debt, may be compelled by another creditor, who has but one of them, to apply the proceeds of sale by execution, so as to leave to the latter a resort for payment of his debt, to the only fund in his power.

H. being the owner of lot No. 68, a judgment is obtained against him by E. for 347 dollars 25 cents. This judgment is afterwards revived, before which H. becomes owner of lot No. 30. During the interval H. mortgaged the first mentioned lot No. 68, to H. H. for 2500 dollars. Afterwards H. acquired a tract of land, and then A. obtained judgment against him for 1107 dollars 51 cents. The three pieces of land were sold on an execution, and lot No. 68 brought 400 dollars, lot No. 30, 180 dollars, and the tract 50 dollars, total 630 dollars. This money being brought into court, it was decreed that the price of lot No. 30 should be first applied to E.'s judgment, and the residue of that judgment should be satisfied out of lot No. 68; that the remainder of the price of lot No. 68, should be applied to H. H.'s mortgage; and lastly, that the price of the tract should be applied to A.'s judgment.

APPEAL from the decree of the court of common pleas of *Jefferson* county.

The facts of this case are fully stated in the opinion of the court.

*Foster*, for the appellant.
*Heath*, for the appellee.

The opinion of the court was delivered by

KENNEDY, J.—Prior to the 22d of February 1832, when J. B. Evans obtained a judgment in the common pleas of Jefferson county, against Thomas Hastings, for the use of Charles Evans for 347 dollars 25 cents, debt, Thomas Hastings became the owner of a lot of ground No. 68, situate in the borough of Brookville, in said county. On the 15th of February 1835, the judgment of Evans against Hastings was revived by the entry of a new judgment in a writ of *scire facias.* Before this latter date, however, Hastings had become the owner also of another lot of ground, No. 30, situate in the same borough of Brookville, so that the judgment of revival in favour of Evans operated as a lien on both lots. But during the interim between the date of the original judgment and the judgment of revival, Hamilton Humes, the appellant, obtained a mortgage upon the lot No. 68, securing the payment of 2500 dollars to him from Hastings, which was recorded, or filed in the recorder's

[Hastings' Case.]

office of the county for that purpose, on the 4th day of November, the same day of the date of the mortgage. After these occurrences, and the proceeding mentioned had taken place, Hastings became the owner of a tract of land situate in the county of Jefferson; and being the owner of it, as also of the two lots of ground, William G. Alexander, on the 14th of February 1837, obtained a judgment against him for a debt of 1107 dollars 51 cents, which became immediately a lien on the two lots of ground and the tract of land. In 1839, these lots of ground, and the tract of land were all taken in execution and sold by the sheriff as the property of Thomas Hastings, for the following prices, to wit: lot No. 68, for 400 dollars, lot No. 30, for 180 dollars, and the tract of land for 50 dollars; thus making an aggregate of 630 dollars, a sum greatly short of the whole amount of the judgments and mortgage. The sheriff having received the money, brought it into court, that it might be appropriated towards paying the liens by the court according to law. The court conceiving the judgment in favour of Evans to be the first lien, in point of time, on the two lots of ground, which was no doubt correct, directed the 400 dollars, raised from the sale of lot No 68, to be applied, first towards satisfying the Evans judgment, and the balance of this judgment remaining unsatisfied, after this application, to be paid out of the money made by the sale of lot No. 30; and the residue of the price of lot No. 30, as also the 50 dollars, the price of the tract of land, to be appropriated towards paying the judgment in favour of Alexander: thus excluding Hamilton Humes from all right to participate, by virtue of his mortgage, in the receipt of any portion of the money. He therefore complains that the direction or decree of the court below is erroneous, in not allowing to him, on his mortgage, the residue of the price of lot No. 68, that would have remained, had the court, as of right according to equity and justice they might, applied the price of lot No. 30, in the first place, towards payment of the judgment in favour of Evans, and then as much of the price of lot No. 68, as would have satisfied it. This, we think, the appellant was entitled to claim upon principles of equity and natural justice, as well as benevolence; and that the court below ought to have decreed accordingly in his favour. The facts here, when viewed under a proper aspect, present nothing more than the ordinary case, where one of two creditors having two funds, to either of which he can resort for payment, shall not be permitted to defeat the other in receiving payment, by resorting to the only fund upon which the latter has any claim for being paid. That Evans and Humes had acquired liens for their respective debts on certain portions of the property, before Alexander had any lien at all on any part of it, of which the money in court was raised, is clear. Evans by his original judgment, acquired the earliest lien on lot No. 68, and again by his judgment of revival, he obtained a lien on both of the lots as a security for the payment of his debt; whereas Hume, at the time,

had only a lien on lot No. 68, for his debt. Now suppose while Evans and Humes were thus the only lien creditors of Hastings, the two lots of ground had been disposed of by a judicial sale, and the money arising therefrom brought into court for appropriation, would it be tolerated that Evans should be permitted to take the whole of the price for which lot No. 68 had been sold, and thus prevent Humes from receiving any part of his debt? Certainly not; every principle of natural justice would seem to oppose it, while nothing can be advanced in its favour, unless it be said that Evans, having by his providence, secured a lien on both the lots for the payment of his debt, has at law, a right to elect which of the two he will resort to for payment, or to take which he pleases first, if it should require more than one of them to satisfy his debt. Though in ordinary cases, and especially as between him and his debtor, he may have such right, and will be permitted to exercise it, yet when he cannot be prejudiced in the least by being restrained from doing so, and it would injure another to permit him to exercise it, it seems to be both equitable and just, that he should be compelled to use his right in such a way as not to injure the other unnecessarily: *sic utere tuo ut alienum non lædas*, is the maxim of the civil law as to this point, and seems to be applicable here. Besides, it is not only compelling the creditor, who has the two funds, to do unto others as he would that they should do unto him were their respective situations reversed. Kyner *v.* Kyner, 6 *Watts* 224, where this doctrine is discussed, and the authorities bearing on the subject referred to. It is evident, therefore, in the case supposed, that Humes would have had an equity on his side, which would have entitled him to have claimed the interposition of the court in his favour in order to have compelled Evans, had he not been disposed to do it, to take and apply first the whole of the price of lot No. 30, towards payment of his debt, and then so much only of the price of lot No. 68, as would be sufficient to satisfy the residue thereof remaining unpaid; so that Humes might have the remainder of the price of lot No. 68, applied towards the discharge of his mortgage debt. This equity, it must be observed, existed on the part of Humes before Alexander acquired his lien on the property as a security for the payment of his debt; and there is certainly no good reason for saying that the lien of Alexander, subsequently acquired by the procurement of his judgment against Hastings, should affect or destroy the equity of Humes; Alexander must be considered as having taken or obtained his judgment and lien subject to the prior equity of Humes; *qui prior est in tempore, potior est in jure.* The decree of the court below is, therefore, reversed, and it is ordered and decreed by this court, that the whole of the 180 dollars, the price of lot No. 30, be first appropriated towards the payment of the judgment in favour of Evans, and that the residue of the said judgment remaining thereafter unpaid, be satisfied out of the 400 dollars, the price of lot No. 68, and that the

[Hastings' Case.]

remainder of the price of lot No. 68, after this, be applied towards payment of the debt due to Humes upon his mortgage; and lastly, that the 50 dollars, the price of the tract of land, be applied to the payment of the judgment in favour of Alexander, as it was the eldest lien thereon at the time of sale.

Decree reversed.