## Jos. CAIN and others, *vs.* RICHARD C. WARFORD.

By the law regulating appeals in this State, no party can appeal from orders merely dismissing receivers, because nothing is thereby adjudicated affecting the rights of the parties in interest.

But an appeal will lie from an order discharging a receiver, and directing personal property in his hands to be delivered over to an administrator *pendente lite*, because it *determines* the right of the administrator to receive and hold the estate.

The act of 1841, ch. 11, expressly provides an appeal, from orders directing the payment of money or the delivery of property, except where such payment or delivery is to a receiver.

The administrator *pendente lite* of a deceased lunatic, is entitled to the possession of the personal estate of the deceased, and to receive it from the hands of a receiver in chancery, appointed during the lifetime of the lunatic.

APPEAL from the Court of Chancery.

This appeal was taken from an order of the chancellor, passed on the 19th of April 1853, discharging Benjamin H. Ellicott, as receiver of the real and personal estate of Rachel Colvin, a deceased lunatic, and directing him to account for and deliver up the personal estate to the appellee, who had been appointed administrator *pendente lite* of the deceased, by the orphans court of Baltimore city. The appellants are parties who claim to be interested in the fund. The opinion of the Chancellor (JOHNSON,) on the question of the right of the appellee to receive the funds, which is affirmed in this case, is reported in 3 *Md. Ch. Dec.*, 294 to 298. The appeal of Ellicott from the same order, is reported in 4 *Md. Rep.*, 80.

The cause was argued before LE GRAND, C. J., ECCLESTON and TUCK, J.

*Grafton L. Dulany* and *Henry Winter Davis* for the appellants, argued:

1st. As to the motion made by the appellees to dismiss the appeal. The present appeal is taken by parties who are next of kin to the deceased, and at whose instance the receiver

was appointed, parties therefore who are interested in the fund. The order not only discharges the receiver, both as to the real and personal estate, but *directs the payment* of the personal estate over to the administrator *pendente lite*. From *such* an order we say *these* parties have the right to appeal. The act of 1830, ch. 185, does not say what orders could be appealed from *prior* to its passage: the first section down to the *proviso*, clearly contemplates that an appeal *might* be taken from *any* order, and suspends the immediate appeal in certain cases; the *proviso* then says, that the execution of certain orders from which the right of an immediate appeal is *taken away by this act*, shall not be suspended unless an appeal bond be filed. The act therefore does not say what kind of an order could be appealed from prior to its passage, and has no application to this case, unless it can be shown that this order was not the subject of appeal at common law. Besides this, all that part of the act of 1830, ch. 185, which takes away an immediate right of appeal of any order for the *delivery of real or personal property or the payment of money*, unless such delivery or payment be directed to be made *to a receiver*, is repealed by the act of 1841, ch. 11. Under the chancery practice in England, the appointment of a receiver is the subject of a direct and immediate appeal. In the case of *Speights vs. Peters*, 9 *Gill*, 472, it was held that an appeal would lie from an order refusing to discharge a receiver.

But it is said, the chancellor had no right to pass the order appointing the receiver, because it was *new business* which he was forbidden to transact, by the 23rd section of the 4th article of the constitution. This position we deny. The estate was properly in the hands of the court of chancery in the lifetime of the *lunatic;* when she died there was a termination of that suit, but it was revived by making her representatives parties. The steps by which such new parties were made, is not new business within the meaning of the constitution, but a continuation of the matter then before the court, and properly in it.

2nd. If we have the right to appeal, we then insist that the

order was wrong for various reasons. The order not only dismissed Ellicott as receiver, but *dismissed* the *receivership* altogether, and put no protection between us and injury so far as the real estate is concerned. Now we say the chancellor had no right, power or authority, to do this. The appellants were complainants in the court of chancery, and had the right to remain there, and require the chancellor to dispose of the whole case, and to retain the property under his control so long as the court and *litigation* existed. The court of chancery had full jurisdiction over the property, until some one should be appointed at law to receive it, who should have full and ample title at law both to the real and personal estate. 9 *Law Lib.*, 61. 2 *Do.*, 199. 2 *Ves. & Bea.*, 94, *Atkinson vs. Henshaw*. 6 *Ves.*, 172, *King vs. King*.

*Wm. Schley* and *Reverdy Johnson* for the appellee, upon the motion to dismiss, argued:

1st. That there is no right of appeal at all from this order. The chancellor decided that no appeal would lie, and this court in the former case, in 4 *Md. Rep.*, 80, decided that the order settles *no right between the litigant parties*, and this principle is conclusive of the question. The act of 1830, ch. 185, was intended to restore the ancient rule of law, that no appeal should be taken except from a final order or decree, but upon such appeal that all intermediate orders might be reviewed. It gives an appeal from an order appointing a receiver, because that was a high and a harsh proceeding, but does not apply to the case of a refusal to appoint, or rescinding the appointment, because this leaves matters to stand just as they were. The act of 1841, ch. 11, repeals only a part of the act of 1830, but gives no *right of appeal* at all: it does not enlarge the cases from which appeals may be prosecuted, nor does it even embrace all the classes of orders contained in the 1st section of the act of 1830. The intermediate act of 1835, ch. 346, gives an immediate right of appeal from an order *appointing a receiver*, but none from an order refusing to appoint, or rescinding an order appoint-

Cain, *et al.*, *vs.* Warford.

ing a receiver. The acts of Assembly therefore do not reach the case, and the question then recurs, is the right to be found in the law of the court of chancery? This question is too plain for argument, for it is not an order settling any rights of the parties. 6 *H. & J.*, 302, *Thompson vs. McKim.* The case of *Speights vs. Peters*, 9 *Gill*, 472, was an appeal from an order *appointing* a receiver, as well as from one refusing to discharge him, and the question whether it was a proper case for an appeal, was not raised nor argued.

2nd. But the order of the chancellor appointing the receiver in this case is *coram non judice* and void, because it was new business prohibited by the proviso to the 23rd section of the 4th article of the constitution. The bill was filed in chancery *exclusively* upon the lunatic cause, and by the death of the lunatic in February 1853, the jurisdiction of the chancellor over the whole case was *terminated.* The clause of the constitution just cited, prohibits any new proceedings in the case, whether by bill of review, or by a bill in the nature of a bill of review, or by petition. Nor was there any necessity for the exercise of this power by the chancellor, because there was an equity court in Baltimore city competent to exercise the jurisdiction.

3rd. But if this could be passed and an appeal will lie from it, we then say it was correct and should not be reversed. So much of it as directs the delivery over of the personal estate to the administrator *pendente lite*, was proper, because he was the party entitled by law to the custody of it. On this point the argument of the chancellor, and the authorities cited by him, are conclusive. The order was also proper so far as the real estate is concerned. For *this* a receiver has already been appointed by the equity court in Baltimore city, and if this order should be reversed it would not give back the property to Ellicott. But the chancellor had clearly the right to control his *own officer*, and what right have these appellants to complain? How does it affect them? It was a matter in the chancellor's discretion to appoint whom he pleased; the receiver is but the hand of the court to be

appointed at pleasure, and removed whenever the court pleases, and another appointed in his place. Besides in passing this order the chancellor expressly reserved the power to change, modify, or annul it, and to discharge the receiver, and to pass such orders and decrees in the premises as might be deemed necessary and proper.

TUCK, J., delivered the opinion of this court.

This record was before the court on the appeal of Benjamin H. Ellicott, from the same order from which the present appeal was taken, in 4 *Md. Rep.*, 80. It was then held that a receiver could not appeal from an order discharging him from his office. The question now is, on the motion to dismiss, whether an appeal will lie from the same order, at the instance of parties claiming to be interested in the fund?

Upon a careful examination of the law regulating appeals in this State, we are of opinion that such parties cannot maintain an appeal from orders merely dismissing receivers, for the reason that nothing is thereby adjudicated affecting the rights of the parties in interest. It operates only as a release of the court's hold upon the property by the hand of its receiver, as being no longer necessary for the purpose which induced the appointment. If afterwards the preservation or management of the property should require it, the court might and doubtless would again exercise the power of appointing another receiver. This we take to be the law as resulting necessarily from the character and duties of such an office. 7 *Gill*, 320. 9 *Gill*, 472. 4 *Md. Rep.*, 80.

But the order appealed from did more than discharge the receiver. It directed the personal property to be delivered over to Warford as administrator *pendente lite*. It does not, any more than the discharge of a receiver, settle questions of property as between the claimants, but it does necessarily determine the right of the administrator to receive and hold the estate, and is an adjudication on a point litigated in the court below, and properly before us for review. The act of 1841, ch. 11, expressly provides an appeal from orders direct-

DECEMBER TERM, 1854.          287

ing the payment of money or the delivery of property, except where such payment or delivery is to a receiver. Here the delivery was required to be made by the receiver to the administrator *pendente lite*, and, as we have said, involved an adjudication of his right to receive the property.

The only question necessary to be decided on this appeal, is, whether Warford, as administrator *pendente lite*, was entitled to the possession of the estate? On this point we have no doubt. That part of the case is so fully discussed by the chancellor, that we may, without going into the question ourselves, adopt what he has so conclusively urged, as the grounds of our decree.

*Decree affirmed with costs.*