(Decided 17th February, 1871.)

WILLIAM HAMILTON *vs.* FRED'K SCHWEHR, JOHN A. ALLERS, JOHN W. WILSON, and others.

*Appeal—Costs in Equity within the Discretion of the Court—Mechanics' lien claimants—Marshalling of securities.*

In the matter of costs, Courts of Equity in this State have a discretionary power, from the exercise of which no appeal will lie.

Hamilton *vs.* Schwehr, *et al.*

A decree, in other respects right, will not be disturbed, although, in the judgment of the Court of Appeals, there was an improper direction as to the party or fund charged with the payment of costs.

The doctrine of marshalling of securities, will be applied in favor of mechanics' lien claimants.

On the 2d of October, 1867, H leased to S, two lots of ground in the city of Baltimore, one on the corner of McHenry and Sterrett streets, and the other on the west side of Sterrett street, and on the same day S executed to H a mortgage of the same lots, to secure an existing indebtedness, and advances to be made, to enable S to erect certain houses on the Sterrett street lot. The advances were made, and the houses erected. On the 21st of February, 1868, S executed to H another mortgage on the same lots, to secure a further indebtedness. Between the recording of the two mortgages certain material men filed their lien claim against the Sterrett street lot. By proceedings in equity, the property was sold, but the proceeds were insufficient to pay the claims of the material men and the two mortgages. The proceeds of the McHenry street lot were sufficient to pay the whole of the first mortgage of H, and part of the second, while the proceeds of the Sterrett street lot were insufficient to pay the claims of the material men. Upon the question of the proper distribution of the fund between the respective claimants, it was HELD:

That the doctrine of the marshalling of securities applied, and the material men were entitled to the proceeds of the Sterrett street lot, on which alone they had a lien, while the proceeds of the McHenry street lot only, were applicable to the payment of the mortgage claims.

APPEAL from the Circuit Court of Baltimore City.

In addition to the facts of the case as given in the opinion of the Court, it may be further stated that after the final ratification of the sales, the proceedings were referred to the auditor, who stated four Accounts, viz: A, B, C and D, the last upon instructions of the complainant's counsel. To Accounts A, B and C, and in part to Account D, the complainant excepted. All of these Accounts were rejected by the Court's order of the 9th of December, 1869, and the papers were again referred to the auditor, with directions to state an account upon the principles set forth in the opinion of the Court. The auditor thereupon stated and reported Accounts E and F. By Account E, stated in accordance with the

opinion of the Court, the proceeds of the McHenry street lot, less commissions, costs, expenses, &c., were applied to the payment of the whole of the first mortgage of the complainant, and of a part of the second; and the proceeds of the Sterrett street lot, after deducting commissions, costs, expenses, &c., were applied ratably to the claims of the material men. Account F, stated in accordance with the written instructions of the complainant's solicitor, applied the fund upon the same principle as in Account E, but by a difference in the apportionment of the costs, expenses, &c., in the two accounts, the amount appropriated to the payment of the second mortgage claim by Account F, was greater than the amount appropriated by Account E, and the balance distributed among the mechanics' lien creditors by Account F, was less than the balance distributed by Account E. The complainant excepted to Account E as to the manner of the allowance of costs, and further to the same Account, as also to Account F, because in each of said Accounts, the auditor did not allow the amount of the complainant's two mortgage claims in full, with interest to the day of sale, but in distributing the proceeds of sale of the two lots, which were both covered by the two mortgages, he allowed the full amount of the first mortgage only, and a proportionate amount of the second mortgage, treating the second mortgage as a deferred lien against the Sterrett street property, and the first mortgage as a lien to be satisfied out of the property on the corner of McHenry and Sterrett streets, to the total exclusion of the lien of the first mortgage on the Sterrett street property, and excluding thereby the exceptant from the benefit of his second mortgage lien on the entire property. The complainant insisted that in stating said Accounts his claims should have been allowed by the auditor, as far as the sums to be distributed would go, out of the proceeds of sale of the Sterrett street property, in satisfaction of the sum of two thousand dollars, with interest to the day of sale, part of the first mortgage claim; and out of the proceeds of sale of the pro-

perty on the corner of McHenry and Sterrett streets, for. distribution, the auditor should have allowed the residue of the first mortgage claim, and the whole of the second mortgage claim, with interest thereon to the day of sale. The complainant, further excepting, insisted that the mechanics' lien creditors had no right to compel him to resort to one or other of said lots for the satisfaction of any part of his claims, much less by such election to compel him to abandon, to his loss, any claim or lien against any of the property covered by the two mortgages.

The Court, (PINKNEY, J.,) by its order of the 8th of March, 1870, finally ratified and confirmed Account E, and ordered a distribution of the fund accordingly, and rejected Account F. From these orders of the Court, passed on the 9th of December, 1869, and the 8th of March, 1870, the complainant appealed.

The cause was argued before BARTOL, C. J., STEWART, BRENT, GRASON and MILLER, J.

*T. A. Linthicum* and *W. H. A. Hamilton*, for the appellant.

The lien of a mechanic or material man is an extraordinary remedy, created not by the act of the party but by the law, based solely upon the terms of the law giving the lien; and where the law defines the remedy and provides the means of enforcing it, and limits its extent or operation, all questions arising thereunder must be determined by the terms of the law itself. *Carson vs. White,* 6 *Gill,* 17; *Greenway vs. Turner,* 4 *Md.,* 296; *Thomas vs. Barber,* 10 *Md.,* 380; *Hess, &c., vs. Brown,* 10 *Md.,* 257; *Miller vs. Barroll,* 14 *Md.,* 173.

And the Act, whilst subordinating the lien claim to incumbrances, mortgages, &c., attaching prior thereto, and requiring the amount of such prior incumbrances to be *deducted* in the first instance, before distribution made among such creditors, makes no provision for marshalling securities in favor of such claimants where such prior incumbrancers have liens on pro-

perty not affected by the lien, or to which the liens cannot extend as in cases of mortgages upon one entire lot, upon only part of which buildings have been erected, and the lien is against the part thus built upon. *Jones vs. Hancock,* 1 *Md. Ch. Dec.,* 187; *McKim vs. Mason,* 3 *Md. Ch. Dec.,* 187; *Denmead vs. Bank of Baltimore,* 9 *Md.,* 179; *Mills vs. Matthews,* 7 *Md.,* 315.

Nor does the Act, when it undertakes to provide, as in sections 21 and 30, for liens against several buildings, arising under joint apportioned claims, contain any provision for marshalling securities in relief of the lien claimants against prior incumbrances, but directly *postpones* such claim.

The Statute giving the lien has provided the mode of establishing such lien, defines the property to which it shall attach, prescribes the time of its commencement, limits its extent as to the interest affected, and subordinates and postpones it to prior incumbrances, and directs the mode and manner of distribution of proceeds, and commands that prior incumbrances *shall be deducted* befor distribution, as authorized by the law, shall be made. And all the circumstances attending such liens having been provided for by the Act, no other relief than that given by the Act can be extended, either in law or equity. The Statute furnishes the rule which must be complied with, both as to jurisdiction and relief. *Glenn vs. Fowler,* 8 *G. & J.,* 340; *McPherson vs. Snowden,* 19 *Md.,* 19; *Heard vs. Stamford, Temp. Talbott,* 173; 1 *Story's Equity, sec.* 61.

The foregoing principles would govern the claims of lien creditors were they complainants seeking to enforce their liens; and their situation is not changed by being made defendants, nor are their rights thereby enlarged.

Upon general principles of equity, the Court will, where a party has a lien upon two funds, and another a lien or interest on only one of the funds, require the first to resort to that fund against which the other has no lien, so far as may be necessary to satisfy both claims. But persons who

are not *common creditors* of the *same debtor* have no right to compel the creditors of both funds to resort to one in order to increase the dividend of those who can only claim against one. 1 *Madd. Chy.*, *ch.* 3, *page* 336; *Ex parte Kendall*, 17 *Vesey*, 527; 1 *Story's Equity*, secs. 642, 643, 644, 645; *Woollen Ex. vs. Hillen*, 9 *Gill*, 185.

Hamilton is the creditor of Schwehr, and holds a prior lien under his first mortgage upon the two lots of ground, and under his second mortgage a lien upon both lots of ground, *i. e.* the lot at the corner of McHenry and Sterrett streets, against which the lien claimants have no lien or claim, and the lot on Sterrett street, against which the lien claims attached before the second mortgage. The lien claimants are not the creditors of Schwehr, the debtor of the complainant, and have no lien or claim created by Schwehr, but are the *creditors of Schamburg* only, the contractor for building. the houses, against whom the complainant has no claim, and for this debt due them by Schamburg have, under the Mechanics' Lien Law, a lien upon the Sterrett street lot; and not being, with Hamilton, common creditors of Schwehr, upon the authorities above cited, they cannot compel Hamilton to take satisfaction of his first mortgage out of the McHenry and Sterrett street proceeds to the prejudice of his second mortgage, which is a valid lien on that property, unaffected by any conflicting claim of parties. *Aldrich vs. Cooper*, 8 *Vesey*, 191; *Averall vs. Wade*, (*Lloyd & Goold*,) 252; *Averall vs. Wade*, (*Flannagan & Kelly*,) 325; *Boozman vs. Johnston*, 3 *Simons*, 377; *Watson vs. Bane*, 7 *Md.*, 117; *Barnes vs. Rackster*, 1 *Younge & Coll., New R.*, 401.

The rights of Hamilton in respect of his first and second mortgages, to the proceeds of sales, are to be considered and treated as entirely independent and distinct as if the second mortgage were made to a third party; and then, in distributing the funds, the second mortgagee could, in like manner, and upon the same principles of equity as asserted by the lien claimants, insist upon having the first mortgage satisfied

Hamilton *vs.* Schwehr, *et al.*

out of the Sterrett street property in case of his said second mortgage—or in other words, the first mortgage stands as a lien against the whole ; the lien claims affect only the Sterrett street property ; the second mortgage affects both the corner and Sterrett street property, though as to the Sterrett street property subject to the lien claims; were there no intervening incumbrances on the Sterrett street property the second mortgagee would clearly have the right to have the proceeds of sale of the corner property applied to his mortgage, were the first mortgage satisfied out of the Sterrett street property, and as the lien claims on the Sterrett street property prevent the application of the entire proceeds of that property to the first mortgage, it is apparent that the equities of the second mortgage prevent the application of the entire proceeds of sale of the corner property to the first mortgage in exclusion of the claim of the second mortgage. *Hoye vs. Penn,* 2 *H. & G.,* 477 ; *Gen. Ins. Co. vs. U. S. Ins. Co.,* 10 *Md.,* 517 ; *Reigle vs. Leiter, et al.,* 8 *Md.,* 405 ; *Dodge vs. Doub,* 8 *Gill,* 16 ; *Woollen's Ex'rs & Kurtz vs. Hillen's Ex'r,* 9 *Gill,* 185 ; *Winder vs. Diffenderffer,* 2 *Bl.,* 166 ; *Post vs. Mackall,* 3 *Bl.,* 484 ; *Watkins vs. Worthington,* 2 *Bl.,* 507, 532 ; *Mills vs. Matthews,* 7 *Md.,* 315 ; *Doub vs. Barnes,* 4 *Gill,* 1 ; *Griffith vs. Frederick Co. Bank,* 6 *G. & J.,* 424 ; *Ellicott vs. Ellicott,* 6 *G. & J.,* 35 ; *McCullough vs. Dashiell,* 1 *H. & G.,* 96.

This is a case in which the Court, without resort to the law of *marshalling* and *contribution,* can do equity and arrange the rights of the parties without doing injustice to either, by first charging the proceeds of both lots with the first mortgage, as was done in *Barnes vs. Racster,* and as to the residue of each lot, award the balance of the proceeds to Hamilton's second mortgage, and the lien claimants respectively.

*C. Dodd McFarland* and *Sam'l Snowden,* for the appellees.

It is a well-settled principle of equity, that where one creditor has a lien upon two funds, and a subsequent creditor has a lien upon only one of the funds, the prior creditor

shall be compelled to exhaust that fund upon which the subsequent creditor has no lien, before coming upon the fund upon which he has a lien. 1 *Story's Equity Jurisprudence*, *section* 633.

But, where the debtors are not common to both creditors, or the funds belong to different debtors, the subsequent creditor, as a general rule, would have no right to the application of this principle, *unless the relation between the debtors be such as to render it more equitable that both debts should be paid by one debtor rather than by the other, in which case equity will compel the election.* *Ex parte Kendall*, 17 *Ves.*, 520; *Dorr vs. Shaw*, 4 *Johns. Ch. R.*, 17; *Newson vs. McClendin and others*, 6 *Geo.*, 399; *Wise vs. Sheppard*, 13 *Ill.*, 41–47.

Schamburg contracted with Schwehr to erect houses on Sterrett street, and he purchased materials from the appellees which were used by him in the building of the houses. The appellees not being paid, gave the notice to Schwehr as required by law, and filed claims of lien against the property, thereby acquiring specific liens thereon. Schwehr never paid Schamburg for the materials used by him, and the proceeding of the creditors was in effect to attach the money, still in the hands of Schwehr, and due to Schamburg. It is certainly, therefore, more equitable that Schwehr, whose property received the benefit of these materials, and who has in his hands the money due to Schamburg therefor, should pay for them, than that Schamburg should, without having received any money from Schwehr, be compelled to pay the debts incurred for materials. The appellees are entitled to the same right as Schamburg himself would have had if he had filed a claim for the whole of the materials furnished, and work and labor done. Their equity is worked out through Schamburg, and as he would have had the right to compel Hamilton to elect, so they are now entitled to be subrogated to the same right. It is in fact the case put in *ex parte* Kendall, "*for Schamburg can insist that the debt should be paid by Schwehr in the first instance,*" and the equity of the

lien creditors supervening furnishes a ground for the interposition of the Court in their favor.

This is not, however, the case of two creditors not having a common debtor, nor is it that of a creditor having a lien upon the property of two several debtors ; but here the materials were in " contemplation of law delivered on the credit of the buildings," and the law having given to the material man a lien against the buildings which he has perfected by complying with the terms of the law, the buildings on Sterrett street became the debtor to the lien creditors, and, therefore, the claim of Hamilton and the appellees, is in fact against one common debtor, the property, the value of which was derived from materials furnished by the appellees on the credit of it, with the expectation of being paid therefor, and it certainly would be unjust that Schwehr should raise money upon mortgage of the property, built with materials furnished by the appellees, and then that the mortgagee should be permitted to interpose that mortgage to prevent the lien creditors from marshalling so as to get paid for the materials furnished by them, and contained in the houses sold. *Landis vs. Roger*, 59 *Penn. S. R.*, 95 ; *Law of Liens, sec.* 96.

Nor will this principle be applied when the rights of third parties *intervene*, but is not defeated by claims arising *after the equity has become fixed. The N. Y. L. Ins. and Trust Co. vs. Vanderbilt*, 12 *Abbott, Pr. R.*, 458 ; *Fowler vs. Barksdale*, 1 *Harper's Eq.*, 164 ; *Hasting's Case*, 10 *Watts*, 303 ; *Aldridge vs. Forbes*, 4 *Jur.*, 20 ; *Averall vs. Wade, Lloyd & Gould*, 252 ; *In re Mower, Law Rep.*, 8 *Eq.*, 109.

That mechanics' lien claimants are entitled to the right of having assets marshalled in the same manner as any other holders of liens, would necessarily follow from the fact that they have a lien. It is admitted that, in order to acquire a lien, the terms of the law must be strictly pursued, but after the lien is acquired, no difference can be perceived between its effects and that of any other lien. The lien of a judgment upon real estate results from the fact that a statute gives

a right to the creditor to excute the land to obtain satisfaction of his debt; it does not, in terms, give a lien, nor does it give a right to marshal assets, but, on the contrary, confines the right of execution to the interest of the debtor. Yet the principle of marshalling funds has been frequently applied in favor of judgment creditors. Thus applying the principle in favor of statutory liens. *Coombs vs. Jordan,* 3 *Bland,* 284. And it has been decided that the lien of a mechanic, after it becomes perfect under the statute, stands upon the same footing as a mortgage would stand, and affects existing rights, whether legal or equitable, to the same extent. *Kenny vs. Gage,* 33 *Vermont,* 303–307; *Law of Liens, sec.* 45.

The statute is remedial in its character, and is to be so construed; but because it provides that prior liens shall be deducted before a distribution can take place between the creditors themselves, it does not, therefore, follow that as against those prior lienors a Court of Equity cannot marshal the assets. A judgment is a general statutory lien; a mortgage is a specific lien. A mechanics' lien claim combines the qualities of both, and is a specific statutory lien. A Court of Equity is directed "to apportion the proceeds among the persons entitled to liens, according to their respective rights." *Code of Public General Laws, Art.* 61, *sec.* 25.

In the application of the principle of marshalling, there is no difference between the different kinds of liens, whether they be statutory, equitable, or by contract; for the doctrine of marshalling is not a creature of the statute law, but is strictly an equitable doctrine.

BRENT, J., delivered the opinion of the Court.

In October, 1867, the appellant, Hamilton, leased to Frederick Schwehr, two lots lying in the City of Baltimore, one on the Southwest corner of McHenry and Sterrett streets, and the other (adjoining) on the West side of Sterrett street. On the same day, a mortgage was executed by Schwehr to Hamilton, on these two lots, to secure the payment of four thousand

dollars—part of which was for a debt already due, and the other part for advances to be made, to enable Schwehr to erect five houses on the lot upon the West side of Sterrett street. Such advances were to be made as the houses progressed, and were in fact made and paid according to the terms of the mortgage.

In February, 1868, Schwehr executed to Hamilton another mortgage on the same two lots, for the purpose of securing to him a further indebtedness of two thousand five hundred dollars. After the recording of the first mortgage, and before the recording of the second, the houses on the Sterrett street lot were commenced, and certain material men, who furnished the materials for their erection, have filed their lien claims against this lot. They proceeded in equity to enforce their lien, and Hamilton also filed a bill to foreclose his mortgages. The cases of Hamilton and the material men were consolidated and the property sold by trustees. The amount realized from the sale was not sufficient to pay the lien claims of the material men, and the two mortgages held by Hamilton. The proper distribution of this fund was prevented by objections filed to the auditor's report, and from the ruling upon them, by the Court below, the present appeal is taken.

The first error alleged is the apportionment of costs as directed by the Court below. The question of costs, as was said by this Court in the case of *Mears & Moulton*, 30 *Md.*, 145, "is a matter resting in the sound discretion of the Court, from the exercise of which no appeal will lie." Courts of Equity in this State always exercise a discretionary power upon the subject of costs, and if the decree is in others respects right, it will not be disturbed, even if in the judgment of this Court there was an improper direction as to the party or fund charged with their payment.

The other question presented is the proper distribution of the fund between the respective lien claimants. It is now too well settled to admit of any question, that a person, having an

interest in one only of two funds, has a right in equity to
compel a party, having an interest in both, to resort to the
other, if necessary for the satisfaction of both debts. 1 *Story's
Equity*, sec. 633, *and authorities there cited.* That this general
principle would apply to the case before us, if the only ques-
tion was between the first mortgage of Hamilton and the lien
of the material men, seems to be clear. The interest of the
material men in the lot on Sterrett street, when perfected
under the law creating their lien, is as full and extensive as
that of a mortgagee. They have the same right of sale
and entitled to the same priorities over subsequent incum-
brances.

There is nothing in the objection that the lien is only statu-
tory, and cannot, therefore, be enforced in any other way, or
to any greater extent than is given by the Act creating it.
It must, beyond question, be perfected in strict conformity
with the Act, but when so perfected it may be governed by
other rules and principles than those specially designated in
it. The lien of a judgment upon real estate exists alone by
force of statute, and that to the extent only of the interest of
the debtor. It is no where provided in the statute creating
it, that it shall be such a lien as Courts of Equity are to re-
spect in the marshalling of assets. Yet the general equitable
doctrine of marshalling has always been applied to a lien of
that description and the propriety of doing so has never been
questioned. If the doctrine is applied to mortgages and judg-
ments, there can be no reason why it should not equally apply
in favor of claimants holding a mechanics' lien.

In the case of *Kenny vs. Gage, and others,* 33 *Vermont,* 307,
which was in equity, the principle is recognized that a me-
chanics' lien stands upon equal ground with a mortgage, and
affects legal and equitable rights to the same extent. In the
case of *The Olympic Theatre,* reported in 2 *P. A. Brown,* 284,
the doctrine of marshalling was applied between mortgages
upon two lots, and claimants holding a mechanics' lien on but
one of them. The mortgages were directed to be paid out of

the proceeds of sale of one of the lots, leaving the other for the payment of the lien creditors.

If, therefore, the question of distribution in this case was between the first mortgage of Hamilton only and the mechanics' lien claimants, the rule of marshalling, if necessary for the payment of both liens, would be applied, and the mortgage directed to be paid out of the fund arising from the sale of the McHenry street lot, leaving the Sterrett street lot to be applied to the payment of the creditors holding the mechanics' lien.

Is this equitable right affected by the second mortgage to Hamilton? We think not. It will not be questioned that he took the lots mortgaged subject to the lien of the first mortgage on both of them, or of the mechanics' lien on one. These liens, at the time they attached, carried with them as incidents the right of the parties respectively to such equities as would render them available and productive. Of these was the equitable right of the holders of the mechanics' lien to have marshalled the fund arising from these lots, if it was necessary to pay both their debt and that secured by the first mortgage. This equity existed before the second mortgage to Hamilton was made, and cannot be affected or destroyed by the conveyance to him. He must, therefore, be held to have taken it subject to the prior equity of the holders of the mechanics' lien. *Hastings' Case*, 10 *Watts*, 303; *N. Y. Life Ins. and Trust Co. vs. Vanderbilt*, 12 *Abbott's Prac. Reps.*, 460. But it has been insisted in the argument, that this equity will not apply where third parties are interested. This doctrine extends only to cases in which the rights of third parties have intervened before the second lien was created. All the authorities, cited in support of it, are cases of settlement of a part of the mortgaged property, in which the parties obtained liens after the settlement, and sought to put the mortgage upon the settled property, so that the unsettled portion might be unincumbered for the payment of their liens. The case of *Barnes vs. Racster*, 1 *Younge & Collyer*, 401, (20 *Eng. Chan.*

*Reps.*,) was very strongly relied upon by the appellant's counsel, but upon examination, it is also a very different case from the one before us. In that case there were four mortgages, the first was given to *Barnes on Foxhall*, the second to *Hartwright* also *on Foxhall*, the third to *Barnes on Foxhall*, and *No.* 32, not only for a new indebtedness, but also as further security for the debt named in the first mortgage, and the fourth to *Williams on Foxhall* and *No.* 32. The *Foxhall* tract not being sufficient to pay the two first mortgages, *Hartwright*, the holder of the second mortgage, sought to put *Barnes* upon *No.* 32 for the payment of his first mortgage. This the Vice Chancellor refused to direct, but not upon any ground inconsistent with the view we have taken of the case now before us. On the contrary, his reasoning strongly intimates that the relief asked for by *Hartwright*, would have been granted, if the first mortgage to *Barnes* had been given upon both *Foxhall* and *No.* 32, although he says he expressly reserves his opinion as to what "would have been the rights of *Hartwright and Williams* had *Barnes'* security upon *No.* 32 preceded and not been subsequent to *Hartwright's* security on *Foxhall*." But the case is inapplicable to the present one, because unlike the security of *Barnes upon Foxhall* and *No.* 32, the security under the first mortgage on the lots upon McHenry street and Sterrett street preceded, and was not subsequent to, the lien on the lot upon Sterrett street.

We think the decree of the Court below was right, and it will be affirmed.

*Decree affirmed.*

(Decided 17th February, 1871.)

MILLER, J., dissented.