EMORY O. BRIGGS vs. JOHN H. KAUFMAN, WILLIAMSON MASON, ISAAC W. WILLARD, AUGUSTUS E. HARDEE, WARREN G. KINNEY, WILSON LEE, ALBERT R. WILDEY AND PETER GREMPS.

Where a defendant has any relief to pray, beyond what the scope of the complainant's bill will furnish him, he must file a cross bill.

To entitle a defendant to a decree against his co-defendant, a cross bill is necessary.

Where premises have been mortgaged, and subsequently parcels of or undivided interests in the same lands have been conveyed or incumbered, on a foreclosure of such mortgage the premises must be sold in the inverse order of such conveyance or incumbrances.

*Van Buren Circuit, April,* 1871.

This action was brought to foreclose a mortgage. The facts as shown by the evidence are as follows: On the 10th day of October, 1865, Isaac W. Willard and Peter Gremps, two of the defendants, were the owners and tenants in common of the premises described in the mortgage which the complainant seeks to foreclose. On that day, Kaufman, who held a contract for the sale and purchase of the land, took a deed therefor, paying Willard the sum of about $735, and executing a mortgage to Gremps to secure his share of the purchase money. On the 11th of October, 1865, at 10 o'clock A. M., this mortgage was recorded. The defendant, Mason, advanced the money paid to Willard, and on the 11th of October, 1865, took a deed from Kaufman of an undivided one-half of the premises, which deed was recorded on the same day, at 12 o'clock M.

For the undivided one-half interest in the premises sold by Kaufman to Mason, Mason was to pay something more than the amount paid to Willard, but how much more does not appear. Whatever the balance was, Mason secured by mortgage to Kaufman, which, Mason swears, has been paid and discharged. When Gremps recorded his mortgage he knew nothing of the conveyance to Mason, but swears that he only expected to get a mortgage on one-half of the land.

Some time after the execution of the deed from Kaufman to Mason, Kaufman conveyed an undivided one-fourth interest to the defendant, Hardee, who mortgaged the same to the d efend-

ant, Lee. Afterwards, and in 1868, Kaufman conveyed all the interest he had retained (an undivided one-fourth) to the defendant Warren G. Kinney. Gremps assigned his mortgage to Briggs after the maturity of the note which it was given to escure, and this suit is brought to foreclose that mortgage.

About three months after the execution of the mortgage from Kaufman to Gremps, Mason discovered for the first time that the mortgage was upon all the land, instead of an undivided one-half.

The defendant Mason, in his answer, prays that the mortgage shall be declared a lien on the undivided half of the land in which he has no interest; while Lee insists that it should be declared, according to its terms, a lien upon the whole of the land.

Lee's solicitor contends that at the time he took a mortgage upon the land, the record showing the Kautman mortgage to be a lien upon the whole premises, it would now be inequitable to declare it a lien upon the half only, upon which he has since taken a mortgage—that such a decree would destroy or lessen his security.

*Stephenson & Barnum*, Solicitors for Complainant.

*Balch, Smiley & Balch*, Solicitors for defendant Mason.

*Upton & Tucker*, Solicitors for Hardee and Lee.

*By the Court*, BROWN, J.—I think it is quite clear from the testimony, that as between Mason and Gremps, or between Mason and Briggs, who took the assignment of the mortgage, if the pleadings would warrant it, Equity would require that the mortgage be declared a lien upon the undivided half of the premises retained by Kaufman when he deeded to Mason. There is nothing in the testmony of Kinney, Mason or Gemps, showing what, if any knowledge, Hardee or Lee had as to the equities between Mason and Gremps.

On the 20th of April, 1871, a stipulation closing proofs was filed, signed by Stephenson & Barnum, for the complainant, Upton & Tucker, for the defendant Lee, and Balch, Smiley &

Balch, for the defendant Mason. Subsequently the solicitors for the complainant consented to permit the defendant Lee, to put in further testimony, which was accordingly taken. Mason was not a party to this latter stipulation, and hence could not be affected by this testimony.

Lee insists that the maxim " *Leges vigilantibus non dormienti-bus subveniunt*," should be applied to the defendant Mason, and himself—that Mason having slept upon his rights is estopped from asking relief from the mortgage as it appears of record, since such relief would prejudice his (Lee's) rights under the Hardee mortgage.

The relief asked for by the defendant Mason, involves the necessity of a litigation between him and his co-defendants. Under our system of equity practice, not requiring defendants to serve upon their co-defendants notices of their pleadings and proceedings,it is difficult to perceive how a decree can properly be made in favor of one defendant against his co-defendant.

The defendant Mason, asks substantially, that the Kaufman mortgage be corrected to correspond with the original intent of the parties. Now it is a well settled rule that " a defendant canno pray anything, in his answer, except to be dismissed the Court," and "if he has any relief to pray, or discovery to seek, he must do so by a bill of his own, which is called a cross bill. 2 *Barb. Ch. Pr*, 126 ; *Lube's Eq. Pl.*, 39.

" A cross bill is used to settle conflicting claims between co-defendants, which it is found necessary to adjust before a complete decree can be made upon the subject matter of the original suit and the rights of the parties therein." 2 *Barb. Ch. Pr.*, 127; *Mitf. Eq. Pl.*, 81; and " a cross bill is necessary to enable a defendant to have a decree against a co-defendant." *Talbot vs. McGee*, 4 *Monroe* 379.

In the case of *Pattison et. al. vs. Hull et. al.*, 9 *Cowen*, 747, it was held that a cross bill is always necessary where the defendant is entitled to some positive relief beyond what the scope of the complainant's bill will afford him.

Under the state of the pleadings in this case no decree can be made discharging the lands of Mason from the lien of the Kaufman mortgage. The case must be disposed of by the well settled rule in

reference to the marshalling of assets and securities. It must be referred to a commissioner to report the amount due on the mortgage, and on the coming in of that report a decree must be entered for the payment of the sum found due, and in default of such payment that the premises be sold in the inverse order of alienation.

The answer of Mason prays his premises be decreed discharged from the lien of the Kaufman mortgage. This cannot be done. It also prays that the lands be sold in the inverse order of alienation and incumbrance. Such a prayer is not for affirmative relief, nor does it seek to abridge the complainant's rights. The order in which the premises are sold cannot affect him.

In the case of *Cooper vs. Byxley*, 13 *Mich.*, at page 474, Campbell, J., in delivering the opinion of the Court, says: "It has always been understood to be the settled law of this State that, where mortgaged premises are conveyed or incumbered in parcels they are upon a foreclosure, to be sold in the inverse order of such conveyances or incumbrances, unless the mortgagee will be prejudiced by having the property sold in parcels." The reason assigned in the books for this rule is, that where one is owing a debt, his own property should be held to discharge that debt, before taking the property of his grantee. And this equity having arisen in favor of the first purchaser, must remain in his favor against any subsequent equities of other parties derived from his grantor. The reason of the rule applies with equal force where undivided interests are conveyed or incumbered as when separate parcels are conveyed or incumbered. For authorities on the question of marshalling securities, see *Mason vs. Payne, Walker's Ch. R.*, 459; *Caruthers vs. Hall*, 10 *Mich.*, 40; *James vs. Brown*, 11 *Id.*, 25; *Cooper vs. Byxley et. al.*, 13 *Id.*, 463; 1 *Story's Eq. Jur.*, § 633; *Howard Ins. Co. vs. Halsey*, 4 *Sandf.*, 566; 8 *N. Y.*, 271; *Chapman vs. West*, 17 *Id.*, 125; *La Forge Ins. Co., vs. Bell*, 22 *Barb.*, 271; *Commermercial Bank vs. Reserve Bank*, 11 *Ohio*, 444; *Guion vs. Knapp*, 6 *Paige*, 35; *Grosvenor vs. Lynch*, 2 *Id.*, 300; *Stuyvesant vs. Hale*, 2 *Barb. Ch. R.*, 151; *Ayers vs. Husted*, 15 *Conn.*, 504; *Hasting's Case*, 10 *Watts*, 303; *Shannon vs. Marsellis*, 1 *N. J. Ch.*, 413; *Wickoff vs. Davis*, 3 *Green. Ch.*, 224.

Let it be referred to a commissioner to compute the amount due, and on the coming in of his report, take a decree directing a sale of

the mortgaged premises, in default of payment, in the order I have indicated, governed by the abstract of title submitted in evidence, and selling so much of the premises as shall be necessary to satisfy the mortgage with costs of foreclosure and sale.