## WILLIAM C. HORN *vs.* JOHN H. BOHN.

*Harvesting Crops by Away-going Tenant—Injunction and Receiver—Costs and Expenses When Receiver Improperly Appointed—Appeal.*

An out-going tenant who was entitled to return to the land for the purpose of harvesting crops sown by him, should not be restrained from doing so and a receiver appointed to take charge of the crops upon vague and unproved allegations that he would damage the land and the crops planted by an incoming tenant.

An appeal lies from an order directing the expenses incurred in the man-agement of property in the hands of a receiver to be paid in a certain manner.

Plaintiff and defendant were joint owners of certain crops growing on plaintiff's land which defendant had contracted to harvest. Upon the application of plaintiff a receiver was appointed to harvest the crops. Subsequently the receiver was discharged and it was adjudged that defendant was entitled to possession of the crops. An order of Court directed the plaintiff to pay all the costs except one-half of the expenses of harvesting which the defendant was ordered to pay. *Held*, that this disposition of the costs and expenses was proper under the circumstances of this case.

When the Court finds that there was no sufficient ground for the appointment of a receiver of certain property, and the defendant was in no wise responsible therefor, it is equitable to require the plaintiff who applied for the receiver to pay the expenses of his administration; and if the plaintiff has an interest in the property under the control of the Court, such property should be made responsible for the payment of the receiver's expenses.

An order dissolving an injunction and discharging a receiver also provided for the payment of costs and expenses. A subsequent order directed the expenses to be paid as provided by the previous order. Appeals were taken from both orders, but that from the first was not taken within the time prescribed by statute. *Held*, that the matter of the payment of the expenses is presented to this Court by the appeal · from the second order since it adopts the disposition made in the first order.

Appeal from the Circuit Court for Carroll County (REIF-SNIDER, J.)

The cause was argued before McSHERRY, C. J., BRISCOE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*Wm. P. Maulsby, Jr.*, and *Alfred Ritter*, for the appellant.

*Milton G. Urner* (with whom were *Chas. T. Reifsnider, Jr.*, and *E. Oliver Grimes, Jr.*, on the brief), for the appellee.

BOYD, J., delivered the opinion of the Court.

The appellant filed a bill in equity to enjoin the appellee from trespassing and entering upon his farm for the purpose of harvesting and threshing the rye and wheat crops thereon, and also for the appointment of a receiver to take charge of, harvest and preserve those crops. The appellee was a tenant of the appellant until the first of April, 1901, and those crops

had been sown during his tenancy. The bill alleges that the appellee had threatened that he would destroy and waste the crops growing on the farm, when he went to harvest the rye and wheat, that he had declared to a tenant of the appellant that "he would drive over and utterly ruin the oats crop," that he had threatened that he would not thresh the crops at the barn as the custom of the country required, and declared that he would thresh them in the fields and "will blow the straw all over the fields," thereby killing the grass then set and growing thereon. It was also alleged that the appellee was insolvent and that the appellant would sustain irreparable damage unless he was restrained by the Court. A preliminary injunction was granted and a receiver was appointed. The defendant by his answer denied most of the material allegations against him and made motions to dissolve the injunction and to discharge the receiver. The Court passed an order setting them down for hearing and authorizing testimony to be taken orally. A hearing of those motions resulted in the Court passing an order on the 10th day of July, 1901, dissolving the injunction, directing the receiver to file a report within ten days, and giving the defendant possession and control of the crops, reserving a lien for the payment of the costs and expenses incurred by the receiver, and proper compensation for his services to be thereafter allowed, upon the share of the plaintiff in the crops. The order further provided that if the costs and expenses incurred by the receiver were not paid by the plaintiff to the receiver within five days after demand, then the defendant was authorized and directed to sell so much of the crops to which the plaintiff was entitled, as was necessary to pay them. The bill was retained until the receiver reported and was discharged and for the further order of the Court.

On the 23rd of July, 1901, the plaintiff filed a petition asking the Court to modify the order of the 10th of July in so far as it applied to the plaintiff's paying the costs incurred by the receiver in cutting the crops, and also as to the creation of a lien on his half. The reasons stated for the modifications

were that under their contract the defendant was required to
cut the crops at his own expense, and the plaintiff had filed
a bond by which the defendant was indemnified for any
moneys due him under the decision of the Court.   On hear-
ing that petition the Court passed an order allowing the re-
ceiver a commission of two and one-half *per centum* upon
fourteen hundred dollars (the value of the crops) as compen-
sation for his services as such receiver, "which amount, to-
gether with the expenses incurred by him as appears from his
report, shall be paid as provided by the previous order of the
Court passed in this case on the 10th day of July, A. D.
1901, except as to the sum of $16.17, amount expended for
binder twine, and the one-half of the expenses paid for har-
vesting, to wit : $24, making the aggregate sum of $40.17,
which amount shall be paid by the defendant."   That order
also discharged the receiver, dismissed the bill and directed
the plaintiff to pay the costs of the suit, to be taxed by the
clerk.   On the 21st of September, 1901, the plaintiff ap-
pealed from both orders.

A motion to dismiss the appeal from the order of July 10th,
1901, has been made on the ground that it was not taken in
time.   That motion must prevail, but as the costs and ex-
penses are referred to in the order of July 23rd, to "be paid
as provided by the previous order," etc., those questions are
presented by the appeal from the last order.

An order discharging a receiver does not of itself afford a
ground for appeal (*Cain* v. *Warford*, 7 Md. 282 ; *Washington
Railroad Co.* v. *Southern Md. Railroad Company*, 55 Md. 153),
but as the order of the 23rd of July embraces items of expense
which the appellant contends are not properly chargeable to
him in the manner that he is charged, we will inquire into the
proof on that subject, which will incidentally involve the con-
sideration of the propriety of appointing a receiver.

We do not see any occasion for such appointment.   It is
conceded that it was not only the right, but the duty of the
appellee to harvest the crops.   By the terms of the agreement
he was compelled to house and properly care for all crops

grown on the farm, and to deliver to the appellant one-half thereof, and it is stated in the record that "it is admitted that the out-going tenant goes back to cut the crop." The testimony shows that the appellee objected to his successor in the tenancy (Mr. Black) sowing oats on the strips of land that ran through the wheat fields and Mr. Black said the appellee threatened that if he did he would haul the wheat across the strips, which he claims would seriously damage the oats. Mr. Black said he told him that if he proposed to do that he could not have any stable accommodations for the threshing, to which he replied "if that is the way then, he says, I don't know if I will thresh in the barn, maybe I will and maybe I won't." That conversation was about the first of April—before the oats were sown. There does not seem to have been any further conversation on the subject before the injunction was obtained, which was on the 24th of June, 1901. That was certainly very slight ground for taking such summary proceedings as were adopted. The appellant or his agent might at least have made some further inquiry of the appellee as to what he proposed to do, and if it was important that the grain should be threshed at the barn the appellant might have insisted upon Mr. Black allowing him to do so. If they had reason to believe that he would unnecessarily injure the oats, the appellant and Mr. Black, who owned them, might have taken steps to protect them—perhaps could have obtained an injunction for that purpose, if he insisted upon driving over them in such way as to seriously injure them. The allegation that he said he "will blow the straw all over the fields" is not only positively denied by the appellee, but the only witness who testified to it is flatly contradicted by another witness who was said to be present. Then, too, the allegation that the defendant was insolvent is not sustained by the proof. So without further discussion of the testimony, we think it clear that the appellant wholly failed to make out a case that justified taking the crops out of the possession and control of the appellee, and therefore they were properly returned to him.

The question of costs in equity cases "is a matter resting

in the sound discretion of the Court, from the exercise of which no appeal will lie." *Hamilton* v. *Schwehr*, 34 Md. 107; *Dodge* v. *Stanhope*, 55 Md. 113.   The costs referred to in those cases, however, would not necessarily include all expenses connected with the management of an estate or property in the hands of an officer of the Court.   It was decided for example in *Kratz's case*, 55 Md. 394, that a trustee's commissions were not included in the costs which were governed by that rule.   Whether or not it would apply to a receiver's commissions might depend upon the rules of the Court, and as there is no such rule of Court in the record it is not necessary for us to determine that question.   But the commissions allowed this receiver were unquestionably reasonable and it cannot be expected that he should act without some compensation.   Nor should he be required to incur expenses in the preservation and care of property under his control, without being reimbursed.   The receiver's report is not in the record and hence we have no means of determining the reasonableness of his expenses, but the presumption is that they were not deemed unreasonable, as they would doubtless have been included in the record if they were so regarded.   The only question then is whether proper provision has been made for their payment by the order of the Court.   Ordinarily it would not be just to require the receiver to look to the parties when there is under the control of the Court property, or a fund, out of which he can be reimbursed, but there are cases in which it would be inequitable to charge a fund or property with such expenses.   If, for example, it be determined, that the appointment of a receiver was not justified and that the property belonged to the defendant, it would work a hardship on him to charge his property with expenses which he was in no wise responsible for.   But when the applicant is unsuccessful and the Court has under its control property which he has an interest in, and the defendant not only did not consent to but consistently resisted the appointment and retention of the receiver, the applicant ought to in some way be required to pay the expenses the receiver has properly incurred as well as

the compensation allowed him—especially when the rights of the receiver are involved and not merely those of the litigants. It is true that as between the appellant and the appellee the latter was by their contract under obligation to harvest the crops at his own expense, but why should the receiver be required to look to him for his compensation and expenses incurred by him at the instance of the appellant, when the Court has in hand property of the appellant? That would seem to be peculiarly inequitable when the appellant went into a Court of equity on the ground of the alleged insolvency of the appellee. Although it was the duty of the appellee to harvest the crops, the appellant improperly, as we think, prevented him from doing so and it may be that he had incurred expense in the preparation for it, or could have gathered the crop at less cost than the receiver did. He certainly would not have had the expense of the commissions which were allowed the receiver. The order of July 23rd requires the appellee to pay part of the expenses incurred by the receiver.

It is not necessary for us to decide what should be done when the property or fund is adjudged to belong to the party who was in no wise responsible for the appointment or continuance of the receiver, but under the circumstances of this case we deem it equitable and proper to require the appellant to pay such of these expenses as the order of the Court below includes, and as the Court had control of the property to provide for their payment out of it. A receiver is the agent o the Court, and when he has incurred expenses in the proper discharge of his duties, it is right that the Court should protect him as far as it can lawfully do so, and to see that he is paid for his services. There can be no doubt that the appellant ought to be held responsible for the compensation allowed the receiver, and such additional expenses in caring for and gathering these crops as the appellee would not have been subjected to, if these proceedings had not been instituted, and although the appellee was under obligation to harvest the crops, the appellant was not justified in preventing him from doing so and then require him to pay the receiver for it.

The proof shows that the appellee had his own horses and machinery and some of his neighbors had agreed to help him. It is therefore very probable that it would not have cost him more than the one-half he was required to pay for the harvesting, by the order of the Court. That order was equivalent to requiring payment out of the property, which belonged to the two, of the costs of harvesting, and charging the appellant's share with the other expenses incurred by the receiver. Under the circumstances we deem that provision for the payment of the expenses proper, and the only question about the order was directing the appellee, instead of the receiver, to sell the property in the event of the appellant's failure to pay the amount. The Court might have directed the receiver to demand the expenses of the respective parties, in the proportions determined by its order and in default of payment to sell enough belonging to the party so in default as was necessary to pay his proportion, but no injury to the appellant by reason of that irregularity has been shown and it was stated at the argument that the appellant had actually paid the amount charged to him. It may be that the Court thought that as the defendant was entitled to the property, it was not proper to let the receiver hold or sell any part of it, but as the Court required the defendant to pay part of the expenses, and he had agreed to harvest the crops, it would not have been exacting too much of him to have made that provision for the collection of these expenses, especially as he does not seem to complain of having to pay his part. The order of the Court only includes the expenses and compensation of the receiver, and not the other costs of the proceedings. The authorities differ very much as to how a receiver shall be paid when he is discharged and the property given to the defendant, as will be seen by reference to 17 *Ency. Pl. & Pr.*, 840, etc., but while the facts are not altogether similar to those before us, some of the principles announced in the following cases are applicable to this case, *French* v. *Gifford*, 31 Iowa, 428; *Simmons* v. *Allison*, 119 N. C. 556; *Cutter* v. *Powell*, 7 N. Dak. 631; *Highley* v. *Deane*, 168 Ill. 266. See also *High on Receivers*, sec.

796.   The most equitable rule is to require the applicant to pay such expenses when the Court finds there was no sufficient reason for the appointment of a receiver and the defendant was in no wise responsible for it; and when the Court has control of a fund or property which the applicant has an interest in, it is but just to the receiver to make it responsible for his expenses.   As the defendant was under contract to do the harvesting it was proper to require him to pay such part of the expenses as the facts before the Court showed to be just. As there is nothing in the record to inform us on that subject, we must assume the Court below charged the parties with their proper proportions.

> *Appeal from order of July 10th, 1901,*
> *dismissed; order of July 23rd, 1901,*
> *affirmed, the appellant to pay the*
> *costs, above and below.*

(Decided November 21st, 1902.)