# THEODORE WESLEY DIZE *vs.* JOHN S. BEACHAM AND JOHN H. ADAMS & SONS.

*Unrecorded  Transfer  of  Vessel—Marshalling  of  Assets—Notice  of
Title  From  Possession—Mechanics' Lien.*

A transfer of an interest in a vessel, not registered under sec. 4192 of
the Revised Statutes of the U. S., does not convey a title except as
against the grantor and persons with actual notice of the same; it is
not available against subsequent lien claimants who had no notice
thereof.

Where one creditor has a right to resort to two funds for the satisfac-
tion of his debt, and another creditor can resort to but one of them,
then, as between creditors, the former will be compelled to exhaust
first that fund upon which the single creditor has no claim. This
right to enforce a marshalling of the assets is not affected by a con-
veyance made by the debtor after the liens have attached.

The owner of two vessels executed mortgages on both to secure pay-
ment of the same debt, the mortgages being recorded at the home
port. Subsequently mechanics' liens for repairs were filed against
the second vessel. The mortgagee sold both vessels under a power
in the mortgages, and brought the proceeds into Court for distribu-
tion. After the lien claims were filed, the owner executed to plain-
tiff a bill of sale of one-half of the first vessel, and plaintiff also
alleged that under a parol, unrecorded agreement, made before the
execution of the mortgages, he was one-half owner of the first
vessel, and had been in possession as such, and he claimed that the
mortgage debt should be paid out of the proceeds of the sale of the
second vessel before resorting to the first. The lienors, who had no
claim on the first vessel, asked that the mortgage debt be first paid
out of the proceeds of that vessel. *Held*,

1st. That since the mortgages covered both vessels while the lien
claims affected only the second, the mortgagee was bound, as against
the lienors, to exhaust the proceeds of the sale of the first vessel be-
fore resorting to the proceeds of the sale of the second.

2nd. That the mere possession of the first vessel by the plaintiff was
apparently that of master and not inconsistent with ownership in
another, and was not notice to the lienors that he was one-half owner
under a parol contract: that inasmuch as the bill of sale to plaintiff
was executed after the liens were filed, he could not ask to have the
funds marshalled in any way to their prejudice, and that conse-

quently he was not entitled to any part of the proceeds of sale, the same being insufficient to satisfy both the mortgage debt and the lien claims.

Appeal from the Circuit Court No. 2, of Baltimore City (WICKES, J.)  The case is stated in the opinion of the Court.

The cause was argued before ROBINSON, C. J., BRYAN, McSHERRY, PAGE and BOYD, JJ.

*Thos. S. Hodson* (with whom were *Jacob Myer, Edward S. Kines* and *T. Sherwood Hodson, Jr.*, on the brief), for the appellant.

*Thomas S. Baer* (with whom was *Robert H. Smith* on the brief), for the appellee.

PAGE, J., delivered the opinion of the Court.

The proof, together with the agreed statement of facts in this case shows, that on the 18th day of June, 1891, John A. Evans, owner of the schooner " Moore & Brady," executed a mortgage thereon to Struven & Wacker, and on the same day the said Evans and one Benjamin F. Evans, executed a similar mortgage on the schooner " Mary A. Kirwan."  Both of these mortgages were intended to secure the payment of a note of John A. Evans for the sum of $1,050.00, and were duly recorded in the Custom House at Crisfield, the home port of both vessels.  Benjamin F. Evans owed no portion of this debt, nor was he a party to the note.  On the 18th January, 1893, John S. Beacham & Bro. filed their claim for a lien on the " Mary A. Kirwan " for work done and materials provided, to the amount of $822 ; and on the 24th day of March, 1894, John H. Adams & Sons filed a similar claim for a lien on the same vessel, to secure the payment of $245.07.  On the 11th day of May, 1894, John A. Evans executed a bill of sale to the appellant for one-half of the " Moore & Brady." Struven & Wacker, under the powers contained in the mort-

gages, have sold both of the vessels, and the proceedings having been consolidated, the contest now between the parties is as to the distribution of the proceeds. The appellant in his petition alleges, that sometime in July, 1890, he " purchased or agreed to purchase," of John A. Evans, one undivided half part of the Moore & Brady, for the sum of nine hundred dollars, and that in the September or October following, having no bill of sale, entered into possession of the vessel "as master and half-owner;" that he was by virtue of his purchase entitled to receive one-half of the net earnings, and, by agreement with John A. Evans, one hundred dollars for his services as master. That he remained in possession up to the day of the sale made by the mortgagees, and thereby became entitled, for his share of the earnings, to the sum of seven hundred and thirty dollars, which he paid to John A. Evans, and on the 11th May, 1894, demanded and received a bill of sale for his interest. That he did not owe any part of the mortgage debt, and had no knowledge of it until September, 1894, and, therefore, having paid for the one-half of "Moore & Brady," purchased as stated, he claims he is entitled to the order of the Court directing, first, that Struven & Wacker be required to exhaust the proceeds of the "Mary A. Kirwan," in payment of the mortgage debt, before taking any part of the one-half of the "Moore & Brady" belonging to him; and second, that the mortgagees shall abstain, under any circumstances, from appropriating any part of the one-half of the proceeds of the "Moore & Brady" belonging to him.

The doctrine of marshalling assets may be stated as follows: "That when one person has a clear right to resort to two funds, and another person has a right to resort to one only of these two funds, the latter may say that, as between himself and the double creditor, that the double creditor shall be put to exhaust the security upon which the single creditor has no claim," per LORD WESTBURY in *Dolphin* v. *Aylward*, L. R. 4 H. L. 489. As between the mortgage debt of Struven & Wacker, and the lien claim of Beacham

& Bro., and that of Adams & Son, if the proceeds of the sale of the "Kirwan" are insufficient to pay all, this rule would require Struven & Wacker to first exhaust the proceeds of the sale of the "Moore & Brady," so that the lienors, who have a claim on the "Kirwan" alone, could have payment out of the proceeds of the sale of that vessel. Nor could this right be affected by a conveyance made after these liens were filed. The language of this Court in *Hamilton* v. *Schwehr*, 34 Md. 119, a case not unlike this in respect to the point we are now considering, is directly applicable. It was there said: "These liens, at the time they attached, carried with them as incidents the right of the parties respectively to such equities as would render them available and productive. Of these was the equitable right of the holders of the machincs' lien to have marshalled the fund arising from these lots, if it was necessary to pay both their debt, and that secured by the first mortgage. This equity existed before the second mortgage to Hamilton was made, and cannot be affected or destroyed by the conveyance to him." Applying these principles in this case, if the right of the appellant to the relief he prays for could be rested only upon the existence of his bill of sale, which was executed after the liens of Beacham & Bro., and of Adams & Sons respectively attached, it is clear he could set up no claim to have these funds marshalled in any way that would enure to their prejudice.

It is contended, however, by the appellant, that under the parol contract with Evans, followed by his possession of the vessel, he had a title before these lien claims attached. If this be so, and the lienors had notice of the claim of the appellant, or by reason of his possession are chargeable with such notice, the case would present a different aspect; for, in applying the rules for marshalling funds, the maxim, *qui prior est in tempore potior est in jure* has peculiar force. *Robeson's Appeal*, 117 Pa. St. 628; *Hastings case*, 10 Watts, 305; *N. Y. L. Ins. Co.* v. *Vanderbilt*, 12 Abbot's Prac. 460; 2 *Beach Mod. Eq. Jur.*, sec. 785.

But whatever may be the character of the right of the
appellant to the vessel under his parol contract with Evans,
it still can confer no right to priority as against these lienors
unless the latter had notice of it, either express or implied.
For if they have expended work and material on the
"Kirwan" when they were ignorant in fact and not charge-
able with knowledge of a secret equity between the appellant
and Evans by which their right to marshalling as against
Struven & Wacker would be rendered unavailing to them,
it would be against every principle of equity to allow the
appellant to come in now and deprive them of that right.
Now, assuming for the present that the appellant did pur-
chase and thereby acquire title to the "Moore & Brady" in
July, 1890, can we find from the proof in the cause that
Beacham & Bro. or Adams & Sons either had actual notice
or must be charged with notice thereof? It is not pre-
tended they had actual notice, but it is insisted that it is
inferrible from the fact that the appellant was in possession
of the vessel. Did the mere possession, such as the proof
shows, charge them with notice? It is doubtless true that
in respect to movable property of a kind such as is usually
transmitted by mere delivery, possession and actual custody
of the property, may and does furnish notice of absolute
ownership. *Wade on Notice*, sec. 306. But when the prop-
erty is of a kind usually protected by title papers and the
actual visible possession is not inconsistent with the owner-
ship of another who has the record title, the rule ought to
be like the one applicable to cases where the party is in the
occupancy of land. *Wade on Notice*, sec. 67. In such
cases the possession which is sufficient to put a person on
inquiry, and which will be equivalent to actual notice of
rights and equities in persons other than those who have a
title upon record, must be actual, open, visible, not equivo-
cal, occasional or for a special purpose, and inconsistent
with the title of the apparent owner by the record. *Brown
v. Volkening*, 64 N. Y. 82 ; *Spraeghts* v. *Hawley*, 39 N. Y.
448 ; 2 *Devlin on Deeds*, sec. 769.

The petition states that Dize entered into the possession "as master and half owner." He himself testifies that he went as "master," and that Evans received the net earnings and gave him receipts as representing his share of the net earnings. Evans says, Dize "was to sail her." * * * "I agreed to give him twenty dollars per month, but that included the taking care of her." We think it clear that Dize sailed the boat as master, though he received in addition to his pay as such a share of the earnings with which to buy one-half of it, which was to be his only "when paid for." His possession was to strangers apparently that of a master only and was not inconsistent with ownership in another. The mere fact that he sailed the vessel as her master was not *per se* sufficient to put others upon inquiry and thus charge them with notice of the appellant's claim. It is also insisted that by the parol contract with Evans, Dize acquired a good title even as against persons dealing with the vessel without notice, though he leaves it uncertain when it accrued. According to the proof, "he was to have a right to her," "when she was paid for," and if we take the testimony of Evans this was not done until the spring of 1894. The exact time when the payment was completed does not appear, but possibly it was about the time the bill of sale was demanded and received, that is, on the eleventh of May; and if this be so, his title even under the parol agreement did not accrue until after the lien of Beacham & Bro., attached in January, 1893, and of Adams & Sons, which was filed in March, 1893. Assuming, however, that as between himself and Evans, Dize obtained his title at the time of the making of the contract, that is, in 1890; yet that, in the absence of notice actual or implied on the part of the lienors, could not avail to give Dize a precedence over them. It cannot be questioned that a vessel may be bought and sold as other personal property. "Between the vendor and vendee, neither a bill of sale nor a change of registry is necessary to complete the transfer." *Chadbourne* v. *Duncan,* 36 Me. 89.

The cases cited by the appellant's counsel to sustain his contention, that by a parol contract, accompanied with delivery, a good title would pass, even as against *bona fide* purchasers without notice, do not support that view. In *Scudder* v. *The Calais Steamboat Co.*, 1 Clifford, 370, (finally decided in 2 Black. U. S. Rep. 373), the questions raised turned upon the rights of an equitable owner, where the agent having the legal title, improperly sold the vessel to a *bona fide* purchaser without notice. In the case of *The Amelie*, 6 Wallace, 18, the Court held the Registry Laws of the United States had no application, the vessel not being treated as an American ship; and in *Lynch* v. *The Seminole*, 43 Fed. Rep. 168, neither of the bills of sale were recorded. In *Crapo* v. *Kelly*, 16 Wall. 610, and *Taylor* v. *Carryl*, 20 Howard, U. S. 583, the doctrines applicable to purchasers or lienors, without notice, were not involved. On the other hand, the Act of Congress of 1850, being sec. 4192 of the Revised Statutes of the U. S., provides, that " no bill of sale, mortgage, hypothecation or conveyance of any vessel, or part of any vessel, shall be valid against any person other than the grantor, mortgagor, his heirs and devisees, and persons having actual notice thereof, unless such bill of sale, mortgage, &c., is recorded in the office of the Collector of Customs where such vessel is enrolled." This section, whenever it has come before the Courts, has always been construed to mean that no transfer not recorded will be available to convey title, except as against the grantor and his representatives and persons with notice. *Moore* v. *Simonds*, 100 U. S. 146; *Guiding Star*, 18 Fed. Rep. 269; *The Madrid*, 40 Fed. Rep. 682.

In no aspect of the case can we determine that the equity of Dize to ask for marshalling in his favor, is superior to that of Beacham Bro., and of Adams & Sons, and we must therefore affirm the decree of the lower Court.

*Decree affirmed.*