## GABRIEL CLARK POLK vs. HELEN A. CLARK et al.

*Bill to Enforce Parol Gift of a House—Insufficient Evidence—Competency of Witness.*

Plaintiffs bill alleged that his grandfather, now deceased, promised to give him a certain house and put him in possession thereof, that plaintiff had expended money in making improvements upon the faith of the promise and that his grandfather's illness and death prevented the execution of a deed. The bill asked for specific performance against the devisees of the alleged donor. *Held,* that the fact of the alleged gift is not established by such clear and conclusive evidence as is requisite to warrant the relief asked for since the proof is equally consistent with defendants' theory that the plaintiff had been put in possession of the house on the condition that he would keep it in repair and pay the taxes, and the evidence also shows that the donor was not prevented by illness from executing a deed, but positively refused so to do, and that the alleged improvements made by the plaintiff were only such repairs as tenants ordinarily make.

Upon a bill to enforce specific performance of a promise by a decedent to convey a house to the plaintiff by way of gift, the plaintiff is not a competent witness, under *Code*, Art. 35, sec. 2, to prove the alleged gift.

Appeal from a decree of the Circuit Court of Baltimore City (WICKES, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, BOYD, PEARCE and JONES, JJ.

*James P. Gorter,* and *H. Arthur Stump* for the appellant.

*Thomas R. Clendinen* and *George Whitelock* (with whom was *Wilton Snowden* and *J. Chas. Linthicum* on the brief), for the appellees.

FOWLER, J., delivered the opinion of the Court:

The bill in this case was filed by Gabriel Clark Polk, a grandson of the late Gabriel D. Clark, against the trustees under the will of the latter to enforce the specific performance

of an alleged oral contract for the conveyance of certain real estate in the city of Baltimore.

The bill alleges that during his life the testator gave the property in question, known as No. 236 Laurens street, worth $4,500, to the plaintiff, and put him in possession thereof, and that relying upon this act of his grandfather as a gift, he expended a considerable sum of money in making permanent improvements on the property, and that the deed was about to be executed by his grandfather to the plaintiff when the former "was stricken with sickness, which alone prevented him from conveying him the legal title to said property to" the plaintiff. The answers deny the alleged gift and agreement. The Circuit Court by its decree of June 22, 1900, dismissed the bill, and the plaintiff has appealed.

It appears to us there can be no difficulty in disposing of the question presented by this appeal. The law involved is well settled. In *Haines* v. *Haines*, 6 Md. 443, it was held that when the testimony showed that the father had repeatedly said he had given the land to his son, and also that the latter took possession of it, exercising all the time the rights of an owner, improved it by repairing the buildings and planting orchards, the inference is justified that there was a contract between them, "that the son was to have the land if he would improve it; and possession of the land and expenditure of money by the son in pursuance of such contract, frees it from the objection that it is in violation of the Statute of Frauds. But in *Hardesty* v. *Richardson, Exr.,* 44 Md. 621, the rule is broadly and clearly laid down that in all cases like this there must be the most *satisfactory evidence of the contract* sought to be enforced. "The proof must be *clear, definite* and *conclusive* as to the *fact of the gift,* and as to those acts done on the faith of it which render inequitable any attempt by the donor to avoid the gift." What is the condition of the proof we find in the record before us?

In the first place it is clear that the testimony of the plaintiff was properly excluded, the other party to the alleged contract being dead. *Art. 35, sec. 2 of the Code.* But if his tes-

timony should be given its full effect, his case would not be helped. He was asked by his counsel upon what arrangement with his grandfather he took possession of the house on Laurens street, and he replied : "There was no arrangement at all." It is true he also says that about the time he was married in 1895, his grandfather promised him a house, and said he would give him one. And that he understood he was to pay the taxes and that he owned the house. But he does not undertake to say that the house in question was ever promised to him. On the other hand if the alleged donor had intended or desired to execute a deed, there was ample opportunity for him to do so, but there is no evidence to show that he ever contemplated such action. However, as this testimony is clearly inadmissible, it is unnecessary to discuss it further, but we will briefly refer to the other testimony adduced to sustain the allegations of the bill, consisting of that of three witnesses, the mother, the wife and aunt of the plaintiff. His mother, when asked what was said by her father in reference to the plaintiff and the Laurens street house, replied that he had told her he *would* give the plaintiff that house, and at the same time asked her if she thought he could keep it in repair and pay taxes. She supposed the plaintiff was the owner because her father had said to her he had given the house to the plaintiff. The plaintiff's wife, it appears, saw the grandfather but three times, and her whole testimony is to the effect that he asked her if she thought her husband could pay the taxes and keep it in order, and she answered "yes." "That was all." The aunt, when asked if she had any conversation with the alleged donor in regard to the house, testified that the conversations were all on his side, and that he merely told her that he had fixed the plaintiff very nicely, and had given him the house in question.

It may be assumed *ex gratia*, though we by no means so concede, that this testimony on behalf of the plaintiff measures up to the requirements of the rule that to be effective it must be *clear, definite* and *conclusive.* The mother's testimony in the first instance was that a gift would be made in the future,

and then that the gift had been made in the past; but at the same time she said she was asked if she thought the plaintiff would be able to keep the house in repair and pay the taxes. The aunt's testimony, as indeed is that of all the plaintiff's witnesses, is quite as consistent with the theory that the plaintiff had been put in the house by his grandfather on the condition that he would keep it in repair and pay taxes as with his contention that a gift of the house had been made to him by his grandfather.

Recalling the situation of the parties, it is difficult to believe that if there had been any intention on the part of the plaintiff's grandfather to give him the legal title to the Laurens street house, that he would not have done so. We find no testimony in the record to sustain the allegation of the bill that the execution of the deed was prevented by sickness. On the contrary the evidence is clear and uncontradicted that up to a very short time before his death he was quite competent mentally and physically to execute a deed. His wife, who was constantly with him during his illness, testified that to the last he gave directions in regard to his business and was careful to see that everything was done according to his orders. To the same effect is the testimony of Mr. Wilton Snowden, who was his friend and legal adviser. But not only is there an absence of any evidence to show that a deed was prepared for execution, and that its execution was prevented by sickness, but the policy of insurance was never changed from the name of the grandfather to that of the plaintiff. In the case of *Hardesty* v. *Richardson, supra*, the fact that such a change was made before the deed from the father to the son could be executed was considered by this Court as strong evidence of the gift. "The buildings," said this Court, "on the farm were insured by and in the name of the son; and in obtaining the insurance the father made representations in reference to the ownership of the farms, which, when taken in connection with the other facts of the case, would seem to be quite conclusive against him." And so in the case just cited the property was assessed in the name of the son, and this fact also

was held to sustain the conclusion reached in that case that there had been an oral gift of real property which a Court of equity would enforce. Here the assessment was never changed to the name of the plaintiff.

II. But if there could be any doubt as to the failure of the proof to measure up to the settled rule applied in *Hardesty* v. *Richardson, Executor, supra*, all such doubts disappear when we consider the testimony on the part of the defendants. For, however clear and definite the plaintiff's proof may be, though, as we have said, we think it is neither, yet when we give, as we are bound to do under the circumstances of this case, quite as much effect to the testimony of the one side as of the other, it is impossible to say that the allegations of the bill are satisfactorily and conclusively established.

We will briefly refer to such parts of the defendants' testimony as we think important in this connection. The witness, who most constantly with the alleged donor during the time when it is said the house was given or promised to be given, is Mrs. Linthicum, at that time his wife. She testifies that her husband allowed the plaintiff to occupy the house in order that it might not remain idle and because of his other houses there, which she says the plaintiff promised to look after, keep in order and keep tenanted. Further testifying, she said, that the plaintiff wished her to intercede with his grandfather to give him a deed for the house, which she did, however, without success ; that the plaintiff's mother also made the same request with the same result. In a word, without rehearsing in detail the testimony of this witness, she testifies clearly, definitely and without qualification that when the grandfather was requested to make the deed he unequivocally and positively refused to do so. Under such circumstances and confronted with such a state of case as this record presents it is impossible to grant the relief asked for by the bill.

III. Nor is the proof any more satisfactory as to the acts done by the plaintiff and the expenditures made by him as he claims on the faith of the gift—which acts and expenditures, it is contended, render inequitable any attempt now to avoid

the gift by those defendants. The so-called permanent improvements made by the plaintiff can hardly be so designated with any show of propriety. From the time he took possession of the property to the time of his grandfather's death he expended the small sum of seventy-four dollars, most of the items being for ordinary repairs such as tenants ordinarily pay for. But if, as we have said, the plaintiff was to occupy without paying rent, he could well afford to pay for such repairs or additions to his grandfather's house. When a stranger to the estate takes possession the mere fact of possession and subsequent improvements of the required character raises a presumption that some contract has been entered into between the parties. "This presumption, however, it is said, does not arise where a son enters upon land previously owned by his father, even though he make *valuable improvements* thereon, such a transaction generally resulting from the confidence which exists between father and son, that the father will provide for the son in his will, which is perfectly consistent with the father's salutary retention of the title to the land." Sec. 481, *Browne, Statute Frauds.* Although the plaintiff takes nothing directly under his grandfather's will, yet his mother is munificently provided for, and one-half of his grandfather's large estate, aggregating $2,000,000, is ultimately given in trust for him and his children.

It will be seen, therefore, that we are of opinion that the decree of the Court below is correct and should be affirmed.

*Decree affirmed with costs.*