COLONIAL BUILDING & LOAN ASSOCIATION, INC.,
ET AL., *v.* JOSEPH D. BODEN, ET AL.
[No. 59, October Term, 1935.]

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON JJ.

*Thomas Lohr Richards*, for the appellant.

*Lewis M. Wilson*, for the appellees.

JOHNSON, J., delivered the opinion of the Court.

From the date of its incorporation in 1920 until January 30th, 1933, Claude R. Woodard was secretary of the Colonial Building & Loan Association, Inc. As secretary, it was his duty, under the by-laws, in addition to receiving deposits from association members and payments upon stock, collecting dues from various mortgagors, and turning such moneys over to the treasurer, to have custody of mortgages and insurance policies of the association. A part of this time he transacted this business from his private office, as he was actively engaged in the insurance business and buying and selling real estate on his own account, and these interests occupied much more of his time than that devoted to the affairs of the association.

On July 2nd, 1926, Woodard received from Joseph D. Boden and wife $100 in cash, for which he executed his individual receipt, in part payment of a house and lot located at 218 Oak Street in Cumberland, Md., it being recited therein that the balance due upon the property sold them was $2,350, to be paid in monthly installments of $25 each, with interest at six per cent., to be computed semiannually, with the further provision that the property was to be free of all liens and encumbrances. At that time the title to the property was in Edward Ahern and wife, and a mortgage of record existed thereon in favor of one Luther Ash. Ten days later Woodard made application to the association for a loan of $2,210, and offered this property as security by way of first mortgage. The application was received, and referred to a committee to appraise the property and report to the association, but on July 19th, 1926, before having received a deed for the property, Woodard and his wife entered into a written contract of sale with Mr. and Mrs. Boden for it. This agreement, although more formal than the receipt above referred to, was not acknowledged, and was kept by Mr. and Mrs. Boden until May 15th, 1933, when they filed it for record among the land records of Allegany County. On August 9th, 1926, the appraisal committee of the association reported favorably upon the application, the same was approved by the board of directors, who authorized its completion by their attorney, but this was not done until September 22nd, 1926, at which time, no other liens having been placed thereon, there were simultaneously filed for record among the land records of Allegany County a deed from Ahern and wife, in which Ash (the mortgagee) joined, to Woodard and wife, conveying the property as tenants by the entireties, also a purchase-money mortgage to the association from Woodard and wife upon the same property for $2,210, practically the entire proceeds of the loan being paid to Ash in settlement of his mortgage upon the property. In the meantime, on August 13th, of the same year, the Bodens had moved into the premises and taken pos-

session thereof. From July 2nd, 1926, to May 2nd, 1933, Boden and wife made payments under their contract of sale, until the balance due by them thereon was reduced to seventy dollars, and during the same period made permanent improvements to the property in excess of $1,200, but throughout this time Woodard and wife, as mortgagors, had not been prompt in their payments under the mortgage, and on February 24th, 1935, there was still owing upon it to the association $2,093.95, including the balance on principal, interest, and fines. In the meantime, on January 30th, 1933, a shortage having been discovered in Woodard's accounts with the association, his resignation was accepted, and, on March 27th, following, he and his wife gave a confessed judgment to the association for $5,254.82 to cover the supposed shortage, but later, on June 1st, further shortages having been discovered, they gave another confessed judgment to the association for $517. It will be noted that, after Woodard was no longer connected with the association in any capacity, the Bodens made four payments to him under their contract, aggregating $153.

Boden and wife were unaware of the existence of the Ash or association mortgages until after the judgments were secured by the association, when they had a search made that revealed this, while the association had no notice of the Bodens' situation with respect to the property until about August 21st, 1934, when the Bodens filed a bill of complaint against Woodard and wife and the association praying (a) for specific performance of the contract; (b) to have the association's mortgage and judgments declared null and void and non-existent as liens upon the property; (c) to compel the association to join with Woodard and wife in a deed conveying the property to them, free of all liens and encumbrances. The suit was defended by the association, but not by Woodard and wife, and the chancellor below, after hearing testimony, filed an opinion in which he found himself without authority to require the association to execute a deed to Woodard, since it was not a party to the contract be-

tween Woodard and wife and the Bodens, but that complainants were otherwise entitled to the relief sought. The chancellor accordingly decreed that the mortgage to the association, as well as the two confessed judgments in its favor, with interest and costs, were invalid and not subsisting liens upon the property in question, but in all other respects remained in full force; that the plaintiffs were entitled to specific performance of the contract of sale for the property upon paying to the association the seventy dollars balance due by them to Woodard under their contract, with proper interest, and upon payment of the same Woodard and wife were directed to convey the property to the complainants by good and sufficient deed. From this decree, the association appeals.

It is apparent that a loss equal to the difference between the amount due the association under its mortgage and the balance due by the Bodens under their contract must be sustained either by the Bodens or the association.

To sustain the decree appealed from, appellees, while conceding the strict regularity of the transaction between the Woodards and the association attending the mortgage loan, rely upon two propositions: First, the agency of Woodard for the association; and, secondly, the fact that, at the time the purchase-money mortgage was taken by it, the Bodens were in possession of the property.

The chancellor below apparently agreed with these contentions, but the difficulty of accepting the first lies in the fact that the record shows Woodard was acting for himself and wife in accepting the payments from the Bodens under a contract with them, to which the association was not a party and of which it had no knowledge. We entirely agree with the statement of the chancellor to the effect that had Woodard turned over these payments to the association upon the mortgage which he owed, no injury could have been done to the Bodens, but it does not follow that, having received the payments for himself and wife in an individual capacity, his failure to apply them toward his indebtedness to the association would

make him the agent of the latter. The authorities are agreed that the mere fact a person is an agent of his principal for some purposes would not be sufficient to bind the latter in any transaction conducted by him unless acting within the scope of his employment or in the transaction of its business. *Anson, Law of Contracts* (2nd Amer. Ed.) par. 448; 7 *R. C. L.*, page 657; 21 *R. C. L.*, pages 841-843; *Los Angeles Inv. Co. v. Home Savings Bank*, 180 Cal. 601, 182 P. 293; *Farnsworth v. Hazelett*, 197 Iowa, 1367, 199 N. W. 410; *Hardy v. Chesapeake Bank*, 51 Md. 562, 588; *Gemmell v. Davis*, 75 Md. 546, 553, 23 A. 1032; *Black v. First Nat. Bank of Westminster*, 96 Md. 399, 423, 54 A. 88; *Jones v. Sherwood Distilling Co.*, 150 Md. 24, 132 A. 278; *Purdum v. Edwards*, 155 Md. 178, 185, 141 A. 550.

A practical application of this doctrine is found in *Lohmuller Building Co. v. Gamble*, 160 Md. 534, 540, 154 A. 41, 44, where it is held that the act of the agent will not bind the principal if the interests of the former in a given transaction are hostile to those of the latter. In that case, Judge Offutt, speaking for this court and commenting upon this rule, said: "And it may be said that that qualification of the general rule is consistent with both reason and justice. The principal appoints the agent to represent him, and so long as the agent does represent him, it is meet and proper that he should be bound by any knowledge that comes to the agent while acting within the limits of the powers and authority with which the principal has clothed him. But when he departs from the duty which the agency imposes upon him and, in violation of the trust reposed in him, acts not for the principal but for himself and against the principal, it would be hard indeed to charge the principal with knowledge which every dictate of self-interest would prompt the agent to conceal from him. And while there may have been some inconsistency in the application of that principle, its soundness is generally recognized, and that, too, whether the adverse character of the agent's interest is open and notorious or whether it is secret, and whether he actually

participates in the particular transaction in issue, or whether he does not; the test being that where the agent acquires the knowledge in some transaction beyond the scope of his agency, it will not be imputed to the principal in any transaction between the principal and the agent or between the principal and a third party, in which the interest of the agent is of such a character that it may rationally and naturally be inferred that he will conceal his knowledge. L. R. A. 1918C, 902."

We do not overlook the fact that during Woodard's connection with the association as its secretary he was also a director, but this circumstance would not, under the authorities cited, be sufficient to impute to the principal knowledge of his conduct in this case, which was adverse to the association.

In regard to the second contention, it is undoubtedly true that the open, notorious, and exclusive possession of property is usually sufficient to charge an intending purchaser with such notice of the possessor's rights as he could ascertain by reasonable inquiry. 2 *Devlin on Real Estate* (3rd Ed.), pp. 1408 and 1413; 2 *Tiffany, Law Of Real Property*, p. 2220. But this rule is subject to the qualification that such possession must not be consistent with the record title. The constructive notice which arises by possession must always be of such a nature that it may not be rendered ambiguous from any other cause. *Tiedeman, Real Property* (3rd Ed.) par. 586; *Dize v. Beacham*, 81 Md. 603, 608, 32 A. 243; *Polk v. Clark*, 92 Md. 372, 374, 48 A. 67; *Hearn v. Purnell*, 110 Md. 458, 466, 72 A. 906; Code, art. 21, sec. 16. To hold otherwise would in many instances practically destroy the effect of our registration laws, which were created to protect the public, for, as was said by this court in *Hoffman v. Gosnell*, 75 Md. 577, 590, 24 A. 28, 31: "The registry acts of this state were designed to avoid abuses and deceits by mortgages and pretended titles, and for the protection of creditors, and should be construed so as to effect that end." Code, art. 21, secs. 16 and 32; *Williams v. Banks*, 11 Md. 198, 250; *Cooke's Lessee v. Kell*, 13 Md. 469, 493;

*Brydon v. Campbell,* 40 Md. 331, 337; *Abell v. Brown,* 55 Md. 217, 222.

In this case the appraisal was made and the loan authorized August 9th, at which time Woodard himself had no interest in the property, and it was not occupied. Forty-four days later, after appellant's counsel had examined the title, the deed and purchase-money mortgage were filed for record. Throughout this time appellant's agents knew that Woodard himself had no title to the property, yet we are asked to strike down the purchase-money mortgage which was placed upon it, because in the meantime the Bodens had taken possession, when it is evident that, had appellant's agents revisited the property and learned of the occupancy prior to recording the deed and mortgage on September 22nd, this possession would have been entirely consistent with the record title, and they would have had the right to assume the Bodens were occupying the premises as tenants of Woodard. The argument that, had not the association paid off the Ash mortgage, its existence would have been discovered by the Bodens, is more specious than logical, and its acceptance would deny appellant the right to make a valid contract in the very business for which it exists.

It follows that so much of the decree as declared the mortgage not to be a lien upon the premises was erroneous. It is indeed unfortunate for Mr. and Mrs. Boden that this mortgage must be declared a lien upon their home, yet from the beginning it was within their power to protect themselves by ascertaining the nature of their title. This they failed to do, apparently because of their confidence in Woodard, but regardless of the nature of their reason, they must bear the consequences of their own neglect. We do, however, concur in the conclusion reached by the chancellor that the judgment liens of appellant against Woodard and wife are not effective against the rights of the Bodens, the vendees in the contract of sale. Since a judgment creditor is not a purchaser for value, his lien must yield to a prior specific equitable lien. *Knell v. Green Street Bldg. Assn.,* 34 Md.

67, 71; *Ahern v. White*, 39 Md. 409, 421; *Union Trust Co. v. Biggs*, 153 Md. 50, 60, 137 A. 509; *Caltrider v. Caples*, 160 Md. 392, 396, 153 A. 445. In the case last cited it was specifically held that the lien of a judgment, acquired subsequent to a contract of sale, was ineffective as against the rights of the vendee therein, when the latter thereafter paid the balance due thereunder.

The decree appealed from must be affirmed in part and reversed in part, and cause remanded, in order that a decree may be passed not inconsistent with this opinion.

> *Decree affirmed in part and reversed in part, and cause remanded for a decree not inconsistent with this opinion, the costs in this court and in the court below to be paid by appellees.*