## MEDICAL MUTUAL LIABILITY INSURANCE SOCIETY OF MARYLAND v. THE MUTUAL FIRE, MARINE AND INLAND INSURANCE COMPANY ET AL.

[No. 48, September Term, 1977.]

*Decided November 9, 1977.*

The cause was argued before MOORE, LOWE and LISS, JJ.

*John F. King* and *Angus R. Everton,* with whom were *Anderson, Coe & King* on the brief, for appellant.

*James D. Peacock,* with whom were *John H. Mudd, Pamela P. Wassmann* and *Semmes, Bowen & Semmes* on the brief, for appellees.

LISS, J., delivered the opinion of the Court.

The immortal Bard said,

"Friendship is constant in all other things
Save in the office and affairs of love;
Therefore all hearts in love use their own tongues;
Let every eye negotiate for itself
And trust no agent." [1]

The issue here is whether this admonition applies as well to affairs of the market place as to affairs of the heart.

Appellant, Medical Mutual Liability Insurance Society of Maryland (hereinafter, Medical Mutual), sued B. Dixon Evander, individually (hereinafter, Evander), B. Dixon Evander and Associates, Inc., a corporation of the State of Maryland (hereinafter, Evander Associates), and The Mutual Fire, Marine and Inland Insurance Co., a body corporate of the State of Pennsylvania (hereinafter, Mutual Fire), for slander and libel. In its declaration the appellant alleged generally that it had been injured as a result of numerous false statements respecting the appellant's business contained in a brochure prepared and published by Evander and Evander Associates while acting on their own behalf and as agents for Mutual Fire, appellee.

Mutual Fire filed a motion for summary judgment supported by affidavits asserting generally that Evander and his firm were not acting as appellee's agents, servants and employees when the brochure was prepared and issued. Appellant filed an answer to the motion for summary judgment supported by affidavits and exhibits. The trial court (Brannan, J.) granted summary judgment for Mutual Fire and a motion for reconsideration was filed by the appellant. A hearing was held and, after hearing argument and considering memoranda filed by both parties, the trial court entered final judgment in favor of the appellee, dismissing it as a party to the action and permitted an

---

1. *Much Ado About Nothing*, II, i, 184. The selection of the quote from this play is not intended to be a subtle comment on the subject matter of this controversy.

appeal pursuant to Rule 605 a,[2] Maryland Rules of Procedure. It is from this judgment that this appeal was filed.

The facts disclosed by the various motions, affidavits and exhibits in the case are in the main undisputed. Evander is a licensed surplus lines broker [3] authorized by the State of Maryland to place medical malpractice insurance with

---

2. Rule 605 a provides:

"Where more than one claim for relief is presented in an action, whether as an original claim, counterclaim, cross-claim, or third-party claim, the court may direct the entry of a final judgment upon one or more but less than all of the claims only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates less than all the claims shall not terminate the action as to any of the claims, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims."

3. The "Surplus Line Insurance Law" is found in Maryland Code (1957, 1976 Cum. Supp.) Art. 48A, §§ 183-199. Section 184 states the conditions under which a surplus line policy may be issued:

"If the full amount or policy of insurance required to protect the interest of the insured cannot be obtained from insurers who are authorized to do business in this State, such surplus amount or policy, hereinafter designated as surplus line, may be procured from unauthorized insurers subject to the following conditions:

(a) If procured through a broker, the insurance must be procured through a licensed surplus line broker licensed in Maryland;

(b) The insurance must be eligible as surplus line in accordance with the provisions of this subsection.

(1) A diligent search and effort must be made among the insurers who are authorized to transact and are actually writing the particular kind and class of insurance in this State, and the amount of insurance eligible for an unauthorized insurer is only the excess over the amount procurable from authorized insurers.

(2) The insurance must not be procured for the sole purpose of securing advantages either as to:

(i) A lower premium rate than would be accepted by an authorized insurer; or

(ii) Terms of the insurance contract;

(iii) Provided nothing in this subtitle shall be construed to prohibit a more favorable premium rate or more favorable terms of the insurance contract in an unauthorized insurer, if the risk is eligible as surplus line in accordance with the provisions of subsection (b) (1) above.

(c) There must be compliance with the other applicable provisions of this subtitle."

Mutual Fire. He is also licensed as an insurance agent and is the executive officer of Evander Associates, which is a corporation licensed to procure insurance policies.

As a surplus lines broker, Evander placed medical professional liability insurance with the appellee, Mutual Fire. That type of insurance is on the list of surplus lines approved by the Maryland Insurance Commissioner. Evander had no express agency agreement, written or oral, with Mutual Fire. He was under no contractual obligation to place insurance with Mutual Fire and could place business with any insurer that would accept the risk. After placing each risk with Mutual Fire, Evander filed with the Insurance Division of the Maryland Department of Licensing and Regulation a surplus lines affidavit, as required by the Surplus Line Insurance Law. Maryland Code (1957, 1976 Cum. Supp.) Art. 48A, § 185. Each affidavit certified that the statutory conditions authorizing the placement of such coverage with a nonadmitted insurer had been met. These conditions included the requirement that no authorized insurer writing medical malpractice insurance in Maryland would accept the risk.

Evander also filed copies of 45-day binders, as provided under section 191 of the Surplus Line Insurance Law. The binders were stamped to indicate that the insurance was issued by a nonadmitted insurer as required by section 186. Under section 191, copies of the binders were required to be filed and the original delivered promptly to the insured after placement of the insurance. The names of Shand, Morahan & Company, Inc. (hereinafter, Shand, Morahan) as underwriting managers and Mutual Fire as carrier were printed at the top of each binder. The words B. Dixon Evander & Associates, Inc. were printed at the bottom of the binder.

Copies of the declaration sheets of the actual policies were also filed by Evander with the Insurance Division. These sheets also were stamped to indicate that Mutual Fire was a nonadmitted insurer. Evander's duties as a surplus lines broker included the procurement of the actual policy from the insurer and the delivery of the policy to the insured.

Mutual Fire's name was printed at the top of each declaration sheet and at the bottom of the page the following statement appeared: "All claims to be reported directly to Shand, Morahan & Company, Inc., 801 Davis Street, Evanston, Illinois." The signature of Evander appeared below the name of Shand, Morahan on a line designated "authorized representative." Evander's address was not listed.

A review of the documents filed by Evander with the Insurance Division indicates that Evander, in his capacity as a surplus lines broker, after January of 1976, placed 369 medical professional liability policies with Mutual Fire on behalf of Maryland physicians. During this period, no other surplus lines broker placed medical malpractice insurance with Mutual Fire and Evander did not place malpractice insurance with any other surplus lines insurer.

On August 5, 1975, Evander placed an advertisement in The Evening Sun in which he purported to list 133 "representing agents" of Mutual Fire. A news story, which appeared several days later in the Sunpapers, indicated that a number of the agents listed had stated that they were not agents for Mutual Fire and that they had not authorized the use of their names. Mutual Fire in its affidavit stated that it had not given permission or authority to Evander to prepare and distribute any advertising materials on its behalf and that it never had any knowledge of the preparation of the advertisement nor had it ever ratified Evander's conduct. Evander was prohibited by law, as a surplus lines broker, from preparing and issuing such advertisements, Code, Art. 48A, § 201 (b), and was specifically advised by Mutual Fire's underwriting manager that he had no authority to prepare and distribute such materials.

One year later, in the summer of 1976, Evander and his firm prepared and distributed a brochure which purported to compare the medical malpractice insurance coverage provided by appellant, Medical Mutual, with that provided by Mutual Fire, the appellee. Evander admitted that he knew he had no authority to distribute such material on behalf of Mutual Fire; however, he prepared the brochure,

printed it, and distributed it in the name of his own company, Evander Associates.

Evander Associates paid for the publishing of the brochure with its own funds. A separate page of the brochure stated that

"The information contained herein was subject, in whole or in part, to the opinion of legal and accounting counsel. . . . Any incorrect or misleading statements contained herein are totally unintended and will be corrected upon written notice, containing the confirmable basis of the correction to: B. Dixon Evander and Associates, Inc., 2326 N. Charles St., Baltimore, Md. 21218, who are solely responsible for the preparation and contents contained herein."

It is this brochure which appellant contends contained allegedly slanderous and libelous statements for which it seeks compensatory and punitive damages from Evander, Evander Associates and Mutual Fire.

The sole issue presented by this appeal is whether the trial court erred in granting Mutual Fire's motion for summary judgment on the grounds that there was no genuine dispute between the parties as to any material fact, and that as a matter of law Evander, individually, and Evander Associates, were not acting as agents for the appellee when they published the brochure containing the alleged defamatory statements.

Summary judgment pursuant to Maryland Rule 610 is proper only where there is no dispute as to a material fact and the moving party is entitled to judgment as a matter of law. *McDonald v. Burgess*, 254 Md. 452, 255 A. 2d 299 (1969); *Horst v. Kraft*, 247 Md. 455, 231 A. 2d 674 (1967); *Owens v. Simon*, 245 Md. 404, 226 A. 2d 548 (1967).

The Court of Appeals, in *Tellez v. Canton Railroad Co.*, 212 Md. 423, 430, 129 A. 2d 809, 813 (1957), said:

"The function of the summary judgment procedure is not to try the case or to decide issues of

fact. It is merely to determine whether there is an issue of fact to be tried, and if there is none, to cause judgment to be rendered accordingly."

In *Fenwick Motor Co., Inc. v. Fenwick*, 258 Md. 134, 138, 265 A. 2d 256, 258 (1970), the Court said:

"In a summary judgment proceeding even where the underlying facts are undisputed, if those facts are susceptible of more than one permissible inference, the choice between those inferences should not be made as a matter of law, but should be submitted to the trier of fact."

*Liebergott v. Investment Bldg.*, 249 Md. 584, 241 A. 2d 138 (1968); *Reeves v. Howar*, 244 Md. 83, 222 A. 2d 697 (1966); *Mayor and City Council v. Allied Contractors, Inc.*, 236 Md. 534, 204 A. 2d 546 (1964).

The basic issue presented to the trial court by the motion for summary judgment was whether the various affidavits and exhibits in support of and in opposition to the motion were sufficient to raise a factual issue requiring a determination as to whether a principal-agent relation existed between Evander or Evander Associates and the appellee. One who moves for summary judgment has the burden of demonstrating clearly the absence of any genuine issue of fact and any doubt as to the existence of such an issue is resolved against the movant. *Merchants Mortgage Co. v. Lubow*, 275 Md. 208, 339 A. 2d 664 (1975); *Lynx, Inc. v. Ordnance Products, Inc.*, 273 Md. 1, 327 A. 2d 502 (1974); *Hill v. Lewis*, 21 Md. App. 121, 318 A. 2d 850 (1974).

The existence of an agency relationship is ordinarily a question of fact. *P. Flanigan & Sons v. Childs*, 251 Md. 646, 248 A. 2d 473 (1967). The relation of principal and agent does not necessarily depend upon an express appointment and acceptance thereof, but it may be implied from the words and conduct of the parties and the circumstances. *Heslop v. Dieudonne*, 209 Md. 201, 120 A. 2d 669 (1956). The Court of Appeals has said in innumerable cases that "it is not for the court to determine the question of agency *vel non*, but if the

testimony as to the fact of the agency tends to prove the existence of that relation, it should be submitted to the jury, who are the exclusive judges of its weight." *Levine v. Chambers,* 141 Md. 336, 343, 118 A. 798, 800 (1922).

The issue to be here determined is whether the facts alleged create an inference that Evander was expressly or impliedly authorized to publish advertising materials on behalf of Mutual Fire, such as the brochure in question, or whether he was apparently authorized to do so — or to state it more simply, what was the nature and extent of the agency relation, if any, between Evander and Mutual Fire? The law is clear that where the alleged agency is dependent upon the acts of the parties, the burden of proof rests upon the person alleging the agency to show not only its existence but its nature and extent. F. Mechem, *Law of Agency* §§ 255, 281, 298, 316, 318, 1344 (2d ed. 1914); *Blacher v. National Bank of Baltimore,* 151 Md. 514, 135 A. 383 (1926). There must also be a showing not only that a person is an agent of his principal but that in the particular transaction he was acting within the scope of his employment and that the acts in question out of which the tort arose were within the scope of the agent's authority. *Colonial Building & Loan Ass'n, Inc. v. Boden,* 169 Md. 493, 182 A. 665 (1935); *Deane v. Big Spring Distilling Co.,* 138 Md. 388, 113 A. 891 (1921); *Brager v. Levy,* 122 Md. 554, 90 A. 102 (1914).

The Restatement (Second) of Agency § 254 (1958) states:

> "A principal is subject to liability for a defamatory statement by a servant or other agent if the agent was authorized, or if, as to the person to whom he made the statement, he was apparently authorized to make it."

Initially we observe that Evander's relationship with Mutual Fire would not constitute Evander its general agent. The principal-agent relation is distinguished from that of master-servant in that an agent is employed to represent the principal in regard to contractual obligations with a third person; a servant is employed to render a service to, rather than for, the master, although it may occur that the service

will involve relations with third persons. *A. & P. Co. v. Noppenberger*, 171 Md. 378, 189 A. 434 (1937); Mechem, *supra*, § 36. The theory of liability advanced by appellant as to general agency is based upon Evander's acting as Mutual Fire's agent in that he was exclusive dealer for its medical malpractice insurance in Maryland and that he issued 45-day binders to those purchasing the insurance.

Code (1957, 1976 Cum. Supp.) Art. 48A, § 166 (a), subject to exceptions not here applicable, defines an agent as "a person appointed by an insurer (1) to solicit applications for insurance or annuities or to negotiate insurance on its behalf; and (2) if authorized to do so by the insurer, to effectuate and countersign insurance contracts." An insurance "broker" or "solicitor," on the other hand, is one who acts as a middleman between the insurer and insured, soliciting insurance with a company selected by the insured, or in the absence of a selection by the insured, with a company selected by the broker or solicitor. *Hankins v. Public Service Mut. Ins. Co.*, 192 Md. 68, 63 A. 2d 606 (1949); *American Casualty Co. v. Ricas*, 179 Md. 627, 22 A. 2d 484 (1941). Whether a person is a broker or an agent is determined not by what he is called but by what he does. *Moore v. Commercial Casualty Ins. Co.*, 350 Ill. App. 328, 112 N.E.2d 626 (1953).

16 Appelman, *Insurance Law and Practice* § 8691, prescribes a precise test for determining whether or not one is a general agent:

> "That test is whether or not the agent has the power to bind the insurer by his contract of insurance, or to issue policies on his own initiative, or to accept risks, and if the agent has actual authority to do these things, he is a general agent; if he cannot place coverage in effect, but can merely initiate negotiations therefor, he is not a general agent." *Id.* at 181.

*Continental Cas. Co. v. Holmes*, 266 F. 2d 269 (5th Cir. 1959), *cert. denied*, 361 U. S. 877, 80 S. Ct. 140, 4 L.Ed.2d 114 (1959);

*Smith v. Utah Home Fire Ins. Co.*, 234 Minn. 169, 47 N.W.2d 785 (1951).

The power to bind the insurer, however, does not include the power to issue a temporary binder. Appelman states that

"This is reasonable in view of the fact that almost all soliciting agents are now given the power of temporary binder to protect the insured while his application is being considered by the company for acceptance or rejection. A general agent, on the other hand, has the right, not to make a temporary binder, *but to issue the policy, accept the risk, and place the company upon the hazard at whatever terms he may see fit and for regular policy periods.* In other words, the general agent's acts involve the exercise of *selection and discretion;* ten-day binders are more or less automatic, and ministerial in their nature." (emphasis supplied) *Id.* at 187-88.

*See: Hartford Accident & Indemnity Co. v. Lougee*, 89 N. H. 222, 196 A. 267 (1938) (power to issue 10-day binder, in absence of agreement to the contrary between insurer and soliciting agent, held not sufficient to change status of soliciting agent to that of general agent); *M.F.A. Mutual Ins. Co. v. Rooney*, 406 S.W.2d 1 (Mo. 1966) (power to issue 30-day binder held not sufficient to qualify soliciting agent as a general agent for purposes of accepting service of process). We see no significance in the fact that the binders in this case ran for a period of 45 days.

It is interesting to note that Art. 48A, § 191 (a) provides, *inter alia*, that

"Upon placing a surplus line coverage, the broker shall promptly *deliver* to the insured evidence of the insurance consisting either of the policy as issued by the insurer or, if such policy is not then available, a binder or cover note which shall show the subject, coverage, conditions, term of the insurance, and the name and address of the insurer." (Emphasis supplied).

Appellant's answer to Mutual Fire's motion for summary judgment had annexed to it a copy of the binder used by Evander Associates. The binder was not only delivered by Evander Associates but was in fact issued by it. The power to issue a temporary binder is to be distinguished from the power to effectuate a contract of insurance binding upon the insurer, and only the latter is sufficient to create a general agency.

We are equally unconvinced that the affidavits of the parties raised a material issue of fact as to whether Evander was an agent of Mutual Fire for purposes of publication and distribution of the brochure. Under Regulation 198-1, § 11 of the Maryland Insurance Department Regulations, "Surplus line brokers are subject to the provisions of Section 201 (b) of Article 48A of the Annotated Code of Maryland," wherein it is provided in pertinent part

> "(b) Publishing or broadcasting advertisements of unauthorized insurers or agents. — (1) It shall be unlawful for any person to publish or print in any newspaper, magazine, periodical, circular letter, pamphlet, or in any other manner, or to publish by radio or television broadcasting in this State, any advertisement or other notice, either directly or indirectly setting forth the advantages of or soliciting business for any insurer, agent or other person who has not been authorized to transact insurance business in this State."

Though the acts of Evander contravened the clear proscription of the statute, that would not be sufficient to hold appellee liable unless it in fact authorized or subsequently ratified the action. *See* Restatement (Second) of Agency § 231; *A. & P. Co. v. Noppenberger, supra.* 16 Appelman, *supra,* § 8902, states:

> "A corporation is liable for a defamation by its agent only when such defamation is referable to the duty owed by such agent to the corporation, and was made while in the discharge of that duty. An insurance company cannot be held liable for

slanderous statements by its solicitors not spoken in the course of their employment. Nor does the mere making of slanderous statements authorize the inference that they were made in the course of their employment. And a charge that the defendant company committed the slander by its agents and servants is not proved by a mere offer to prove that certain solicitors uttered the slanders, without offering to prove that such statements were made in the course of their employment, or while acting in the apparent scope thereof.

"The mere fact that the libel was committed in the scope of the agent's employment has been held insufficient; it must be shown, rather, that the libel was either required by or authorized by the employment. The test of whether a corporation is liable for slander is whether the one uttering the slander did so in endeavoring to promote the corporation's business, within the scope of the actual or apparent authority conferred upon him for that purpose. The agent of an insurance company who has no authority to circulate printed matter for the company without its consent cannot make it liable for a libel thus published without the consent or ratification of the company." *Id.* at 659-61.

The affidavit of Joseph E. Morahan, Jr., president of Shand, Morahan, discloses that the publication and distribution of the brochure was done in direct contravention of his instructions to Evander not to publish or distribute any material without prior consent and approval, which was never given. The affidavits of Morahan, Evander and John A. Matlack, president of Mutual Fire, state that no agents or employees of Mutual Fire either authorized, approved, saw, reviewed or had any knowledge of the brochure prior to its issuance. This allegation is unrefuted by either of the affidavits filed by appellant. Additionally, Evander specifically disclosed on the brochure that Evander Associates "are solely responsible for the

preparation and contents contained herein." We conclude that Evander had no express authority, either as a general agent or as an agent for the purpose of publishing the brochure, which would support a finding of a principal-agent relation between Evander and Mutual Fire.

In the absence of an actual agency relation between Evander and Mutual Fire, summary judgment as to Mutual Fire was properly granted unless the affidavits raised a material issue of fact as to whether Evander possessed apparent authority or that Mutual Fire was estopped to deny Evander's agency. Initially, we conclude that the doctrine of estoppel is by its very nature inapplicable to an action for libel. The Restatement (Second) of Agency § 254, which was quoted *supra*, states that a principal is liable for defamation by its agent only if the agent was authorized or apparently authorized to publish the statement forming the basis of the action. *Reserve Ins. Co. v. Duckett*, 240 Md. 591, 214 A. 2d 754 (1965); *Atlantic Trust Co. v. Subscribers*, 150 Md. 470, 133 A. 319 (1926); *New England Mut. Life Ins. Co. v. Swain*, 100 Md. 558, 60 A. 469 (1905).

The Restatement (Second) of Agency § 8 B states the rule of estoppel relevant to our purposes:

"(1)  A person who is not otherwise liable as a party to a transaction purported to be done on his account, is nevertheless subject to liability *to persons who have changed their positions because of their belief that the transaction was entered into by or for him*, if

(a) he intentionally or carelessly caused such belief, or

(b) knowing of such belief and that others might change their positions because of it, he did not take reasonable steps to notify them of the facts." (Emphasis supplied).

We read this statement as requiring reliance and change of position on the part of the plaintiff himself which enures to his detriment and not to the detriment of another. Where

the defamation action seeks to hold one liable as the principal of an agent who published the defamatory material, the result is the somewhat anomalous situation of reliance and change of position by the third person reading the publication but detriment to the defamation plaintiff. In the case *sub judice,* the reliance complained of is by the prospective insurance purchasers, the doctors who read the brochure; the damage complained of is to Medical Mutual for harm to its reputation caused by the brochure. The Court of Appeals in *B. P. Oil Corp. v. Mabe,* 279 Md. 632, 644, 370 A. 2d 554, 561 (1977), *rev'g,* 31 Md. App. 221, 356 A. 2d 304 (1976), quoting from Mechem, *supra* § 245, stated the applicable rule:

> "Estoppel is always a matter *personal to the individual asserting it and he must therefore show that he was misled by the appearances relied upon.* It is not enough that he might have been, or that some one else was, so misled. It must also appear that he had reasonable cause to believe that the authority existed; mere belief without cause, or belief in the face of facts that should have put him on his guard is not enough." (Emphasis supplied).

The Court concluded, "that for there to be liability in a case such as this there must be actual reliance on the part of the person injured." *Id.* at 644-45, 370 A. 2d at 561.

Comment d to § 8 of the Restatement (Second) also enunciates this position.

> "[Estoppel] operates only to compensate for loss to those relying upon the words and not to create rights in the speaker. It follows, therefore, that one basing his claim upon the rules of estoppel must show not merely reliance, which is required when the claim is based upon apparent authority, but also such a change of position that it would be unjust for the speaker to deny the truth of his words. Estoppel is dealt with as a form of deceit, in which the remedy is to hold the speaker to the truth

of his statements instead of creating a tort action for misrepresentation." *Id.* at 32-33.

Concluding as we do that agency by estoppel is inapplicable, we turn to the question of apparent authority. Apparent authority, also referred to as ostensible authority, arises where the purported agent may or may not have actual authority to act for the purported principal, but because of conduct on the purported principal's part the third person believes that the authority to act exists. The "principal," either actively or passively, creates a situation that causes the third person to be misled. The Restatement (Second) of Agency § 8 defines apparent authority as "the power to affect the legal relations of another person by transactions with third persons, professedly as agent for the other, arising from and in accordance with the other's manifestations to such third persons." Comment a to that section states:

"Apparent authority results from a manifestation by a person that another is his agent, the manifestation being made to a third person and not, as when authority is created, to the agent. It is entirely distinct from authority, either express or implied. The power to deal with third persons which results from it may, however, be identical with the power created by authority as it is where the principal's statements to the third person are the same as to the agent and are similarly interpreted. On the other hand, the power may be greater or smaller than that resulting from authority. If it exists, the third person has the same rights with reference to the principal as where the agent is authorized. In the relation between principal and agent, however, apparent authority differs from authority, in that the one having it may not be a fiduciary, may have no privilege to exercise it and may not even know he has it. Although normally it results from a prior relation of principal and agent, this is not necessarily the

case. . . . The rules of interpretation of apparent authority are, however, the same as those for authority, substituting the manifestation to the third person in place of that to the agent." *Id.* at 30-31.

Though the cases and texts refer to apparent authority and agency by estoppel interchangeably and concede no clear line of demarcation between the two, *Reserve Ins. Co. v. Duckett, supra; Mabe v. B. P. Oil Corp.*, 31 Md. App. 221, 356 A. 2d 304 (1976), *rev'd*, 279 Md. 632, 370 A. 2d 554 (1977), for our purposes the distinction lies in the requirement of agency by estoppel that there be personal reliance by the plaintiff, while apparent authority can exist although the plaintiff is damaged because of reliance by another.

While *New England Mut. Life Ins. Co. v. Swain, supra* involved an issue of a principal's liability for the deceit of his agent, the principle there stated applies equally as well where the issue is defamation. The Court stated, "Under the law it is not necessary to show that he had actual authority, an *apparent* authority in the exercise of his employment was sufficient, but the company would not be liable for such an act of its agent unless it was within the scope of his employment, actual or apparent." *Id.* at 577-78, 60 A. 474. (Citations omitted; emphasis in original).

*Aetna Life Ins. Co. v. Mutual Benefit Health & Accident Ass'n*, 82 F. 2d 115 (8th Cir. 1936), is authority for the proposition that an insurance company can be held vicariously liable for its agent's tortious act, if that act was within the scope of the agent's apparent authority even though the insurance company had expressly forbidden the specific act. In *Aetna*, one Buchanan, who was admittedly a general agent of the insurance company, prepared and published a letter containing defamatory statements about the financial condition of a competing company. The letter was distributed to subagents who orally passed the word along to prospective customers. Witnesses for the insurance

company testified that they had specifically instructed the agent that circulars or letters referring to other insurance companies "must not be used under any circumstances," and the defense of the insurance company rested on its contention that the writing of the letter was not within the scope of the agent's employment. In rejecting this contention, the Court stated:

> "A corporation is liable for the acts of its agent, either in contract or tort, done or committed in the course of employment in the business of the corporation. . . . And a libel 'respecting its business, its ability to do business, its method of doing business, its credit or solvency, is libelous per se.' . . . In issuing instructions, suggestions, and information to its subagents, Buchanan was acting within the scope of his employment. The fact that, in executing the work, he may have exceeded or violated his master's instructions cannot aid appellant. . . . 'A master is responsible for the tortious acts of his servants, done in his business and within the scope of their employment, although he did not authorize or know of the particular act, or even if he disapproved or forbade it." *Id.* at 120. (Citations omitted).

We agree with appellant that this is a correct statement of the law; however, the facts of the case *sub judice* are distinguishable in that in *Aetna* there was no question as to Buchanan's express agency, the sole question being the scope thereof. The facts in that case disclose, however, that the libel consisted of statements made in a letter from Buchanan to the subagents who worked for him in his territory. The facts showed that Buchanan was the "chief officer" of Aetna in that territory. His duties included the selection, appointment and training of subagents who reported to him and worked under his instructions. It was part of his job to give them oral and written instructions as to the ways to get business and sell insurance. The libelous

statements were made by Buchanan in a letter to all subagents advising them that "this information should be invaluable to you when you have to meet this assessment outfit in competition." Obviously, Buchanan had actual authority to train subagents and although he had been advised not to discuss the competition in written material, he was expressly authorized to write any letters to his subagents or to prepare circulars to them. In the case *sub judice* the facts clearly establish a lack of any express authorization or direction by Mutual Fire to Evander to prepare and distribute written advertising material of any type.

Turning to the affidavits filed by the parties, there is absolutely no allegation that Mutual Fire took any affirmative steps to hold Evander out as its agent. It undertook no public advertising or private communication to anyone which would constitute one of the requisite manifestations of agency. Nor did it in any way ratify or adopt the information contained in the brochure. Additionally, Mutual Fire did not by lack of diligence on its part fail to take any required action which would justify holding Mutual Fire vicariously liable. Appellant's affidavits raise no issue of material fact with regard to Mutual Fire's allegations that it had not seen or reviewed the brochure; that it in fact had no knowledge of its existence, and that it had specifically forbidden the publication of any advertising material without its prior consent. Appellant's general allegations of Evander's dealing with Mutual Fire on an exclusive basis and underwriting a large number of policies is irrelevant to the type of holding out which would have to be shown to raise a jury question as to whether apparent authority was vested in Evander. Nor, in the absence of an allegation that Mutual Fire authorized, had knowledge of, or subsequently ratified the advertisement in The Evening Sun, can we find the requisite holding out by virtue of that advertisement.

In sum, we find no genuine dispute as to a material fact and conclude that the trial court was correct in holding as a

724

matter of law that Evander was neither the general agent, the agent for the purpose of publishing the brochure, the agent by estoppel, nor the apparent agent of Mutual Fire.

*Judgment affirmed; costs to be paid by appellant.*